## GREGG v. FIRST STATE BANK OF BISHOP et al.

### No. 4963.

Court of Civil Appeals of Texas. Amarillo.

Dec. 19, 1938.

Rehearing Denied Feb. 20, 1939.

R. H. Mercer, Hayden C. Covington, and Chas. J. Lieck, all of San Antonio, for appellant.

Boone, Henderson, Boone & Davis, Jones & Kirkham, and Jas. Easterling, all of Corpus Christi, and Eskridge & Groce, of San Antonio, for appellees.

FOLLEY, Justice.

This is a suit for alleged damages for false imprisonment filed by the appellant, C. H. Gregg, against Paul Cox as the sheriff of Nueces County, Texas, the Standard Accident Insurance Company, surety on his official bond, and the First State Bank of Bishop, Texas. At the conclusion of the evidence the trial court gave an instructed verdict against the appellant and· in favor of the defendants below, who are the appellees herein. From such directed verdict and judgment based thereon the appellant brings this appeal.

The pleadings in the case are not in issue in this appeal and we deem it unnecessary to restate them here. Suffice it to say that the pleadings are sufficient to raise the issues herein discussed.

The testimony shows that the First State Bank of Bishop is a State banking corporation engaged in the banking business at Bishop, Nueces County, Texas, and was so engaged in April, 1934,. when the acts occurred which gave rise to this suit. The principal stock holders of the bank were Pierce Harlan and William A. Harlan, who were each active directors and operators of the bank. The former was vice president and the latter cashier. Leon

Hagan was assistant cashier, teller and bookkeeper. These three men conducted the business of the bank.

On Thursday April 5, 1934, about one o'clock P. M., this institution was entered by two men with masks or shaded glasses who attempted to rob the bank with firearms. William A. Harlan and Leon Hagan were the only two in the bank at this time. These men resisted the attempted robbery and several shots were exchanged between the bandits and the bankers. A number of shots were fired into the floor and portions of the building, breaking part of the marble fixtures and the plate glass window in the bank. Other than this, no injuries were suffered and the bandits fled without accomplishing their obvious purpose. It was either on Friday or Saturday following that these two felons were apprehended. They immediately made written confessions in which they stated that they were the only two men engaged in the attempted robbery.

Amid the confusion attendant upon such an occurrence there seemed to be some intimation in the minds of the local citizens of Bishop that three men were engaged in the attempted holdup. The bankers who were subjected to the assault had the impression that one of the two bandits who entered the bank was a large man of considerable height and proportions. Neither of the two men arrested came up to such purported measurements, the testimony showing that the larger of the two was only of ordinary size. The information as to the large man was imparted to the officers.

C. H. Gregg, the appellant, was an unusually large man. At the time of the attempted robbery, and at the time of the trial in September 1937, Gregg was a traveling employee for the Sherwood Music School at Chicago, interviewing music conservatories, music teachers and pupils in various states of the United States. On Sunday evening, April 8, 1934, three days after the attempted robbery, the appellant was arrested in a restaurant in the city of Corpus Christi, Nueces County, Texas, by the city authorities of Corpus Christi upon information received by them from the constable at Bishop. Such information consisted mainly of the fact that the appellant was a large man and was driving an automobile with a Georgia license, however, there is no intimation in the evidence that an automobile with a Georgia

license was involved in the attempted robbery. From the restaurant the appellant was carried to the city hall and lodged in the city jail, apparently without receiving any information at that time as to why he was being deprived of his liberty.

Some time that same evening the appellee Paul Cox, who was then sheriff of Nueces County, Texas, in company with William A. Harlan, came to the city hall at the request of the city officials. After viewing the appellant, the testimony shows that William A. Harlan stated that Gregg looked like the "big man" who came in the bank. The appellant was then taken to the sheriff's office in Corpus Christi where he was interrogated about his connection with the attempted robbery. The appellant testified that after considerable examination in the sheriff's office, in which a great number of people took part, William A. Harlan said: "This is the man. That was the man that pointed the gun at me. Hold him.." William A. Harlan denied that he made any positive identification of the appellant or that he told the sheriff to hold him. The sheriff corroborated Harlan in the statement that the latter did not tell the sheriff to hold the appellant, however, he admitted that he held Gregg on the identification of William A. Harlan. After the examination in the sheriff's office the appellant was placed in the county jail, no complaint at this time having been filed against him and no warrant having been issued for his arrest and detention. Prior to his being placed in the county jail the appellant told the sheriff he was in San Antonio at the time of the attempted robbery with a "Judge Matthews," and gave the sheriff several names of people to call to verify this alibi.

On Monday morning, April 9, 1934, the sheriff, Paul Cox, and the chief of police at Corpus Christi took the appellant out of jail and carried him, over appellant's protest, to the town of Bishop, some thirty-two miles distant. Before leaving for Bishop the appellant requested the sheriff to take him before a judge urging that he was sure any judge would give him a chance to prove his innocence of the purported charges. Such constitutional right was denied him. During all this time the appellant was vigorously proclaiming his innocence, protesting against his incarceration and asking the sheriff to call several people in San Antonio in regard to his whereabouts on the day of the attempted robbery.

Upon arrival in Bishop, the appellant was taken to the bank, according to his testimony and that of the sheriff, although both William A. Harlan and Pierce Harlan denied that appellant was brought in the bank that morning. The appellant testified that he was confronted in the bank by both of the Harlans and by Leon Hagan, and that a great throng of people gathered around him. In this he was completely corroborated by the testimony of the sheriff. While in the bank, according to the testimony of the appellant, the sheriff asked what he should do with the appellant; that William A. Harlan was about to speak up when he was interrupted by Pierce Harlan who answered: "Hold him. We will send a man down."

After being carried to another place in Bishop and to the town of Kingsville, apparently in the hope of further identification, the appellant was returned to jail in Corpus Christi. That afternoon Leon Hagan went to Corpus Christi and signed a complaint dated April 9, 1934, charging the appellant with the attempted robbery on April 5th. Some time during the day of April 10, 1934, a warrant was issued on this complaint by Honorable Cullen W. Briggs, who was then Justice of the Peace of Precinct No. 1, Nueces County, Texas, but who later became judge of the district court in which this case was tried, he having presided in such trial. The warrant was served upon the appellant about four o'clock P. M. on this same day while the appellant was in jail. Gregg testified that at the time this warrant was read to him he asked to be taken before a magistrate, but that such right was denied him. On this same day the appellant employed W. B. Weaver, an attorney, to procure his release from jail. This attorney consulted the district attorney and furnished the latter with information concerning appellant's alibi. The district attorney testified that Weaver agreed with him that appellant might be held until such time as he might check and verify the purported alibi. Weaver denied that he made any such agreement and insisted that he demanded the release of the appellant from the beginning of his employment constantly until the appellant was finally released. He further asserted that each time he pressed the demands for appellant's release that the district attorney and the sheriff postponed any action on his request on the excuse that they were checking the alibi of the appellant. Finally Mr. Weaver was compelled to file an application for a writ of habeas corpus. On Friday April 13, 1934, after having been incarcerated since Sunday night preceding, the appellant was released upon the writ of habeas corpus without contest upon the part of the State.

We think the testimony conclusively shows that Gregg was the victim of mistaken identity and that he had no connection whatever with the attempted bank robbery. The testimony further reveals that upon every possible occasion during the five days of his imprisonment the appellant demanded his release and requested a hearing before some court. It is also uncontroverted that the appellant was held in jail from Sunday until Tuesday before a warrant of arrest was issued or served upon him, and that thereafter he was refused permission to be brought before any magistrate until his release by the district judge on Friday April 13, 1934. Upon the above facts the trial court concluded there were no issues to submit to a jury.

There are only three instances wherein a sheriff is authorized to make an arrest without a warrant. These are enumerated in articles, 212, 213 and 215 of the Code of Criminal Procedure.

Article 212 provides: "A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an 'offense against the public peace.'"

Article 213 provides: "A peace officer may arrest, without warrant, when a felony or breach of the peace has been committed in the presence or within the view of a magistrate, and such magistrate verbally orders the arrest of the offender."

Article 215 provides: "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

It is not contended that the sheriff was present at the time of the alleged offense and therefore article 212 could have no application to the facts of this case.

The appellee surety company and the appellee bank are the only defendants in the trial court who have filed briefs in this court. In each of these briefs the con-

322

tention is made that the sheriff was authorized to hold the appellant without a warrant under article 213, supra, because the purported offense occurred in the presence of William A. Harlan, who was not only a banker, but was also Justice of the Peace in Precinct No. 3, Nueces County, sitting at Bishop, Texas. This contention is made upon the theory that Harlan ordered the sheriff to hold the appellant and that such order was a judicial decree. It occurs to us that such contention, in view of the record in this case, is rather far-fetched. In the first place, such a purported order on the part of Harlan was expressly denied by both William A. Harlan and the sheriff, Paul Cox. The only evidence in the record to such effect came from the appellant himself. He testified that on Sunday night while in the sheriff's office Mr. Harlan identified him as being one of the bank robbers and told the sheriff to hold him. If such occurred, it happened three days after the attempted robbery, thirty-two miles from the scene of the same and while such justice of the peace was out of his own precinct. Clements v. City of San Antonio, 34 Tex. 25; 26 Tex.Jur. 796, para. 9. Furthermore, there is no intimation from the evidence that Mr. Harlan was then attempting to act in his judicial capacity or that anyone present considered him so acting. If such purported statement could be construed as such an order we call attention to the fact that the statute in question permits only an "offender" to be arrested, while the undisputed testimony shows that the appellant was not an "offender."

As far as article 215, supra, is concerned, although there was evidence that William A. Harlan had positively identified the appellant, such evidence became controverted when William A. Harlan denied such positive identification, his version being that he merely stated that Gregg looked like one of the men who attempted the robbery. Moreover, granting that such identification was "satisfactory proof" to the sheriff that Gregg was one of the bandits, there was no showing that Gregg was either about to escape or that a warrant could not have been procured. The testimony shows that the sheriff's office was located in the same building as the office of the justice of the peace who later issued the warrant. Just why a warrant was not obtained that night, while the chief prosecuting witness was present, is unexplained by the testimony. It is also unexplained why the sheriff did not immediately call Judge Matthews and others at San Antonio whose names had been furnished him by the appellant in order to check the alibi of Gregg before putting him in jail.

Immediately following the three articles above quoted is article 217 of the Code of Criminal Procedure of Texas. It is as follows: "In each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested before the magistrate who may have ordered the arrest, or before the nearest magistrate where the arrest was made without an order." The appellees contend that the requirements of this article were sufficiently complied with due to the fact that William A. Harlan was present at the sheriff's office on the night of the arrest and ordered that the appellant be held by the sheriff. They make this contention in spite of the fact that such an order was specifically denied by both Harlan and Cox. The testimony of the appellant that Harlan told the sheriff to hold him would only controvert the issue thus raised by the testimony of Harlan and Cox; and if it could be said that the appellant is bound by his own testimony in this regard, his own testimony is not conclusive on the issue. He did not understand that a judicial hearing was being conducted or that a judicial order was being made. On the other hand he testified that he did not even know that William A. Harlan was a justice of the peace upon such occasion. The evidence as a whole strongly indicates that on the night of the arrest William A. Harlan appeared in his role as a prosecuting witness rather than as a justice of the peace with an unbiased mind capable of passing upon the rights of the appellant.

After the warrant of arrest was issued and served upon the appellant on Tuesday in the jail, the provisions of article 233 of the Code of Criminal Procedure were not observed. Such article is as follows: "The officer, or person executing a warrant of arrest, shall take the person whom he is directed to arrest forthwith before the magistrate who issued the warrant, or before the magistrate named in the warrant." The testimony shows that the deputy sheriff who read the warrant to the appellant later report-

ed the arrest to the justice of the peace. It is also revealed that such practice was the customary procedure in similar cases by the officials then in charge. The appellees contend that such a report was a substantial compliance with the above requirement of the statute. It is our opinion that the report made by the officer fell far short of a compliance with this law. Not only did the law require that the appellant be brought in person before the justice of the peace issuing the warrant, but the warrant itself ordered it to be done. That the appellant requested such procedure at the time the warrant was served is not controverted.

Under the provisions of the above statutes as applied to the facts in this case, and in view of article 1169, Revised Penal Code of Texas 1925, defining false imprisonment, we think it is apparent that the appellant in this case was wrongfully deprived of his liberty. In a situation similar to that in this case, in McBeath v. Campbell et al., Tex.Com. App., 12 S.W.2d 118, 122, Judge Critz, speaking for the court, said: "The Bill of Rights [Vernon's Ann.St.Const. art. 1, § 19], which is incorporated in the fundamental law of this state, guarantees to every citizen that he shall not be deprived of his life, liberty, or property except by due process of law. We hold that any arrest or imprisonment of any citizen of this state, no matter how poor or obscure, and no matter what may be his station in life, except as allowed or required by the laws of this state, is a violation of the Constitution of this state, and the courts of this state, when appealed to, will redress such wrong if it can be done in a lawful manner." It is further said in the McBeath case: "It is, and has long been, a generally recognized rule that there is no line of separation between the liability of joint tort-feasors. The tort is a thing integral and indivisible, and any claim for injuries arising therefrom runs through and embraces every part of the tort. The liability of one cannot be carried into any portion of the joint tort that is not followed by an equal liability of the other tort-feasors. Each is liable for the whole, and the injured party may pursue one separately, or he may pursue all jointly, or any number less than the whole number. 26 R.C.L. p. 763, par. 13. False imprisonment is a tort, both under our statute and under the common law."

Without extending our discussion of this case any further we think it sufficient to say that the evidence introduced was ample to require issues to be submitted to the jury as to the liability of the bank and of the sheriff, and since the testimony indicates beyond controversy that the sheriff was acting in his official capacity, we also think the directed verdict for the surety company was error.

The judgment of the trial court is reversed and the cause remanded.