CASTILLO v. CANAVATI et al. (two cases).

Nos. 10951, 10952.

Court of Civil Appeals of Texas.
San Antonio.

May 28, 1941.

Rehearing Denied June 25, 1941.

Bismark Pope, of Laredo, for appellants.

Mann & Mann and Tom C. Mann, all of Laredo, for appellee.

MURRAY, Justice.

These two suits were instituted by Juan Castillo and Bruno Castillo, respectively, each plaintiff suing by and through Jose Castillo, his father and next friend. The two suits were tried together in the lower court and are jointly submitted here and may, for all practical purposes, be treated as though consolidated.

The suits were instituted against Pedro Canavati and his son Jesus Canavati. The purpose of the suits was to recover damages for false imprisonment. The trial began before a jury, but when plaintiffs rested the trial court discharged the jury and rendered judgment for the defendants as a matter of law.

Plaintiffs have appealed.

Appellants contend that the evidence was sufficient to show a prima facie cause of action and that the issues raised by the evidence should have been submitted to the jury. We sustain this contention. The evidence shows that Pedro Canavati owned and operated a store in the City of Laredo. That his son Jesus Canavati assisted him to some extent in his business. The plaintiff Juan Castillo was employed by Canavati and worked about the store. Bruno Castillo was the fifteen-year-old brother of Juan. Juan was also a minor.

On Sunday, April 7, 1940, Jesus Canavati decided to go across the river and went by the Canavati Dry Goods Store for the purpose of securing some money. He entered the store and went to a box where the money had been placed on Saturday night and found the money missing therefrom. About 525 Mexican pesos, of the value of $100,. and $100 in checks had been placed in the box on Saturday night. It was Juan Castillo's duty to come to the store on Sunday morning and lower the awnings. In order to enable him to perform this duty, a ladder and a broom were placed in an alley adjoining the store. The gate to this alley was locked and Juan given a key. The thought first occurred to Jesus that the money had been swept out with the trash and put into a trash can in the alley. He went to Juan's house and, not finding Juan at home, secured the key to the alley gate and went back and searched the trash can for the money but without success. Jesus then notified his father, Pedro Canavati, that the money was missing. Pedro came to the store and eventually two city detectives, Abel Cantu and W. H. Kramer, were called in on the case.

An investigation led to the discovery of the fact that there was a ladder in the alley leaning against a one-story toilet. A drainage pipe led from the roof of the toilet to a window. The screen of this window had been broken open. A new screw driver was found under this window. It was Cantu's idea that the store had been entered by some one first climbing up the ladder to the roof of the toilet, then climbing the drainage pipe and entering the window. When Cantu learned that Juan Castillo had a key to the gate to the alley, he expressed a desire to talk to him. Jesus Canavati, after a discussion with his father, agreed to find Juan and bring him to the store by making to

him a false statement that he was needed at the store to do some work. This plan was successful and Juan was brought to the store with his clothes that he had worn the previous Saturday. Spots were found on these clothes that indicated he might have climbed the drainage pipe.

Juan denied that he had been to the store that Sunday, but stated he had given the key to his brother Bruno, who had lowered the awnings for him. Bruno's presence at the store was secured by representing to him that his brother Juan wanted him to come to the store. Juan and Bruno were kept at the store from about 4:30 p. m. until about 7:00 p. m., when they were carried by the detectives to the city jail and locked up for the night. They were released on the following Monday.

Appellants did not testify that they tried to leave the store and were prevented from doing so, or that they were told that they were under arrest prior to the time they were taken to the city jail. However, there were many facts and circumstances testified to from which a jury might have found that they were actually imprisoned while at the store. If they were imprisoned in the store, then Pedro and Jesus Canavati were active participants in restraining them of their liberty.

 Furthermore, there is no doubt about appellants being under arrest and restrained of their liberty from the time they were taken from the store to the police station. There is direct testimony that Pedro Canavati ordered the detectives to take them to jail. This would make a prima facie case against Pedro, if not against Jesus. A prima facie case having been made against at least one defendant, the trial court could not properly take the case from the jury.

 Appellees contend that the pleadings only allege a conspiracy to deprive appellants of their liberty and that there is no cause of action alleged independent of the theory of conspiracy. We overrule this contention. The pleadings are sufficient to charge the appellees with directly participating in the unlawful arrest and confinement.

 Appellees also contend that the arrest was not shown to be unlawful because the evidence does not affirmatively show that the arrest was made without a warrant. We overrule this contention. The arrest having been shown, the bur-

den was upon the appellees to show the lawful authority for the arrest. Alamo Downs, Inc., v. Briggs, Tex.Civ.App., 106 S.W.2d 733, 735; Gold v. Campbell, 54 Tex.Civ.App. 269, 117 S.W. 463; Gregg v. First State Bank of Bishop, Tex.Civ. App., 125 S.W.2d 319; Smith v. Burdett, Tex.Civ.App., 114 S.W.2d 384.

 Appellees cite Citizens Hotel Co. v. Foley, Tex.Civ.App., 131 S.W.2d 402, as supporting their contention that the burden was upon appellants to show that the officers did not have a warrant for their arrest. In that case it was shown that the arrest was made by authority of a city ordinance, a fact not established in the case at bar. If there were a city ordinance of the City of Laredo authorizing the arrest of appellants under the circumstances, the burden was upon appellees to show such fact by proper evidence, and in the absence of such proof no such ordinance will be presumed to exist.

It is true that Abel Cantu testified, in effect, that he arrested the appellants of his own volition, after he had made an investigation, and that the Canavatis had nothing to do with such arrest. This testimony conflicts with that given by appellants and presents a jury question.

The rule is well settled that when a case is taken from the jury and decided by the Court as a matter of law, the facts must be viewed in their most favorable light for the losing party. The evidence most favorable to plaintiffs as against defendants must be considered to the exclusion of all evidence to the contrary, or, stated in another way, we must consider the evidence in its most favorable aspect for the appellants, disregarding all conflicts and contradictions, and allowing every reasonable inference that may be drawn from it in support of their contentions. Elliot v. Texas-Pacific Coal & Oil Co., Tex.Com.App., 29 S.W.2d 982; Walker v. Dawley, Tex.Civ.App., 4 S.W.2d 159; Cox v. Bankers' Guaranty Life Co., Tex.Civ.App., 45 S.W.2d 390; Williams v. Lumbermen's, etc., Ass'n, Tex.Civ.App., 18 S.W.2d 1093; Raper v. Parmenter, Tex. Civ.App., 1 S.W.2d 343.

When the above rule is applied to the facts in these cases, it becomes apparent that the trial court erred in taking them from the jury. Accordingly, the judgments of the trial court in said causes Nos. 10951 and 10952 are reversed and the causes remanded for a new trial.