WILLIAMS et al. v. LUMBERMEN'S RECIPROCAL ASS'N. (No. 9279.)

Court of Civil Appeals of Texas. Galveston. May 23, 1929.

Rehearing Denied June 20, 1929.

H. J. Nichols, W. J. Knight, and Morris, Sewell & Morris, all of Houston, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

GRAVES, J. This concededly correct statement is taken from appellants' brief:

"The appellants, Maggie Williams and H. J. Nichols, filed this suit on March 19, 1928, in the district court of Harris county, Texas, for the Eleventh judicial district, to set aside an award of the Industrial Accident Board of the state of Texas, which had been rendered on a claim for compensation under the Workmen's Compensation Law, arising out of the death of Will Williams, husband of Maggie Williams.

"Appellants alleged that the deceased, Will Williams, had been in the employ of the Myers-Spalti Manufacturing Company at or near the city of Houston, Harris county, Texas, and that while he was engaged in the course of such employment, he fell or was knocked from a moving elevator, violently striking the floor, and thereby suffering injuries which caused his death.

"Appellants further alleged that at the time this injury occurred the Myers-Spalti Manufacturing Company was a subscriber under the Workmen's Compensation Law, and that the Lumbermen's Reciprocal Association, appellee herein, for a valuable consideration had issued to it a policy of workmen's compensation insurance, by reason of which the Workmen's Compensation Law of the state of Texas became operative and applied to the plaintiffs' claim for compensation for the death of Will Williams.

"Appellants further alleged that the plaintiff, Maggie Williams, had notified the deceased's employer and the Industrial Accident Board of the injury and death of Will Williams within 30 days, and had presented her claim for compensation to the Industrial Accident Board within 6 months; that thereafter the Industrial Accident Board made its final ruling and decision thereon, and within 20 days thereafter the plaintiffs, Maggie Williams, and H. J. Nichols, her attorney, notified said board that they would not abide by the award, but would file suit for a review of the same, and within 20 days after giving such notice filed this suit to set it aside.

"The plaintiff Maggie Williams pleaded facts showing the amount of compensation which she should recover, and prayed for judgment based on that amount.

"The plaintiff H. J. Nichols set forth facts showing that he had been employed by Maggie Williams as attorney to prosecute her claim, under which agreement he was to receive for his services the sums provided for under the Workmen's Compensation Law, which sums were specifically alleged, and prayed that he might be apportioned such sums out of any judgment awarded the plaintiff Maggie Williams.

"The defendant pleaded a general demurrer and general denial.

"The case went to trial, and the defendant, by written stipulation, which was offered in evidence, admitted to be true the material facts alleged by the plaintiffs with reference to the following matters:

"(a) That on or about December 15, 1927, Will Williams was an employee of the Myers-Spalti Manufacturing Company.

"(b) That the Myers-Spalti Manufacturing Company was a subscriber under the Workmen's Compensation Law, and was qualified to become such.

"(c) That at the time above mentioned the Myers-Spalti Manufacturing Company carried a valid and subsisting policy of insurance with the Lumbermen's Reciprocal Association, under which the Workmen's Compensation Law applied to the plaintiff's claim for compensation.

"(d) That proper notice of injury was given and claim for compensation filed with the Industrial Accident Board in proper time, and that thereafter, on the 8th day of March, 1928, the board made a final award on the claim, and that the plaintiffs within the time prescribed by law filed notice with the Industrial Accident Board that they would not abide by the award, and that they would file suit to set the same aside.

"Plaintiffs introduced evidence in support of their pleadings; at the close of the plaintiffs' evidence the defendant did not ask a directed verdict, but introduced much testimony on its own behalf, and at the close of all the evidence tendered to the court such a request.

"The court then, over the objection of plaintiffs, instructed the jury to render a verdict for the defendant, to which the plaintiffs excepted.

"The jury having rendered a verdict as directed, the court overruled the objection of plaintiffs, and entered judgment for the defendant in accordance therewith.

"Plaintiffs duly excepted to the entry of such judgment, and preserved all the above-described exceptions by bills of exceptions duly presented and allowed."

The facts showing jurisdiction in the trial court were admitted by the appellee, and the parties agree that the only question for determination on the appeal is: Did the evidence raise an issue as to whether or not the death of Will Williams was caused in a manner supported by the pleadings of the plaintiffs below, appellants here?

We think the issue was raised. In substance, the plaintiffs alleged that Will Williams fell or was knocked from a moving elevator, violently striking the floor upon his

stomach, practically face downward, thereby either (1) rupturing his gall bladder to such an extent as to give rise to a purulent abscess, which caused his death; or (2) rupturing an abscess in his abdominal cavity, so as to cause his subsequent death; or (3) aggravating or lighting up a dormant condition of his gall bladder to such an extent as to thereafter cause his death.

If there was evidence of sufficient probative force to make a proper inquiry for the jury out of any one of these alternative averments, it shold have been submitted, since each, if found to have been proven, would have comprehended a compensable injury under the statute. From a careful examination of the statement of facts it seems to us plain that a question of fact was raised as to whether or not, while Williams was attempting to operate an elevator in his employer's warehouse, some part of it, in falling, struck him upon the head, knocking him through a two-foot aperture onto a floor ten feet below, resulting in such harm to the physical structure of his body as that disease or infection might have naturally resulted therefrom in at least some one of the three specific ways so charged. The accident, in general features substantially as just recited, as well as some injury from it, was undisputedly shown; the only controversy being over just what part of his body he struck the floor on in falling and what the resulting effect was. It likewise appeared that, although on the day of the accident he was doing his full work of heavy labor for his employer, and had continuously been so doing for the greater part of the year immediately preceding, he was never able to work again, declining rapidly thereafter, and dying within 25 days after so suffering the fall, having been brought to a hospital on the fourth day before his death on January 9, 1928.

In support of the peremptory instruction given, the appellee association ably argues that there was no evidence of any probative force supporting any one of the three alternative allegations made as to the cause of death, in that the undisputed evidence showed that Williams fell on his right hip and died three weeks later, not from any effect from the fall, but as a result of toxemia emanating from an independently caused abscess in his abdominal cavity; but we think this view restricts too narrowly the testimony, not only concerning the manner, but also the reasonably probable after effects, of the fall admittedly received.

■ In determining the matter, we must consider the evidence in its most favorable aspect for the appellants, disregarding all conflicts and contradictions, and allowing every reasonable inference that may be drawn from it in support of their claim. Harpold v. Moss, 101 Tex. 540, 109 S. W. 928; Bolt v. Bank (Tex. Civ. App.) 145 S. W. 707. When that is done, it seems clear they were entitled to have the jury pass on it.

■ In the first place, one of Williams' fellow workers was an eyewitness to the fall, and while he said it was more on the right side than the face, indicating further that his hip on that side also hit, rather than his stomach, his testimony as a whole does not exclude the idea that there may have been, in striking the floor, or in instinctively reaching out to lessen the force of the impact, such a strain or jar as made questionable whether or not a rupture either of the gall bladder or of an abdominal abscess had resulted, or at least as to whether some existing trouble in the former had been aggravated thereby. This quotation from it makes that manifest:

"The elevator was just about two feet below the floor; he came out head first and his hand sticking out; that is the first thing I seen sticking out, the hand ahead of him, and he hit on the third floor; that is a wood floor. If I had not stepped back he would have hit me. I was that close to him. He came out with his hand first and fell, well, not right on his side, not right on his face, more so on his side than on his face. He came out this way (indicating). I was standing on the left-hand side of him, and when he came out this way he was looking at me, so he fell more on his side than he did on his face. It was on his right side; he did not fall on his back. I said 'Bill, you are hurt.'"

In the second place, the medical witnesses for the opposing sides, as not infrequently happens, differed as to the cause of death in such way—the version of neither group being legally conclusive—as to leave to the jury the right, not only to choose between them, but also to consider in addition all the other facts and circumstances appearing, and to exercise their common sense upon the whole.

There was positive testimony for appellants by a physician, whose professional qualifications the appellee admitted on the trial, and who made an autopsy upon Williams' body the next day after his death, that he found direct evidence of such a rupture of the gall bladder as in his opinion had caused the death. Among other things he said:

"I had occasion to hold an autopsy upon the body of one Will Williams on January 10, 1928. * * * I found that an autopsy had been made by some one supposed to be at the Herman Hospital prior to the time I made mine. * * * I had the stitches opened in order to find out what I thought was the the cause of his death. I found, having the death certificate before me, in my opinion, it was due to a ruptured gall bladder. My findings on that autopsy were that death was caused by a ruptured gall bladder. * * * There was an inflammatory condition there. In my opinion that was caused by the bursting of the gall bladder, and that produced

death. Abscesses and strictures—anything that prevents the bile flowing out of the bladder—will cause the gall bladder to burst. * * *

"I found the evidence of a ruptured gall bladder. * * * If the gall bladder is ruptured, it leaves an evidence there of the rupture. You can tell whether or not it is ruptured. The only trouble I found in his abdominal cavity was a ruptured gall bladder and inflammation around there. * * * When I made the autopsy of this man, there was sufficient viscera and parts there for me to make an examination and determine the condition existent in the body and the cause of death. * * *

"Assuming that this man, the body of whom I made this autopsy upon, was suffering from a chronic inflammation of the gall bladder, and the duct leading from the gall bladder to the liver, on or about the 15th day December, 1927, at which time he fell a distance of 10 feet, falling on his right side, and at which time, assuming that there was an abscess present in the location near the spleen, in my opinion it is possible that the fall would burst or rupture such abscess. That is my opinion that it would. * * * My opinion is something caused it; my opinion is that the abscess bursted, possibly from the amount of pus inside the abscess, and the blow on it would produce a rupture.

"I did testify yesterday that, in my opinion, the cause of this condition was a ruptured gall bladder. Now, as to why I didn't mention in my testimony yesterday the abscess that I now say I recollect, and which I say might have bursted by this fall; an abscess and a ruptured gall bladder amount to the same thing. * * * The area of the abscess was about 2 inches in diameter. * * * The abscess was just below the gall bladder; in the neighborhood of it. * * * When I testified yesterday that the gall bladder was ruptured, I was correct in that statement. * * * When I saw the abscess, the pus had drained out."

This testimony, although flatly in conflict as to its most material features here with that given by two of appellee's physicians, who had themselves conducted an autopsy on Williams' body the day before, taken in connection with these other facts and circumstances that were indisputably shown, undoubtedly did raise the disputed issue:

(1) The fall precipitated Williams with great force ten feet down upon a hard floor, which his body struck more upon his right side than on his face, with his hands extended in efforts at protection. (2) Although he was then in a badly diseased condition, having a chronic infection of the gall bladder of long standing, that had already, among other effects, caused a large abscess of poisonous matter to form in the abdominal cavity, he yet was able to do a full day's work at hard manual labor, but never could work after that, declining rapidly until his death something over three weeks later. (3) It was impossible to tell by an autopsy after death whether this abscess had been ruptured during life, unless the rupture had been of very recent occurrence. (4) The precipitation or spread of these infections, which might result from a fall upon the right part of or a sufficient strain upon the body generally, into the abdominal cavity, and their consequent absorption into the blood stream, were sufficient to cause death; R. S. art. 8309, § 5; Travelers' Insurance Co. v. Smith (Tex. Civ. App.) 266 S. W. (3) at page 576; Texas Employers' Insurance Ass'n v. Davidson (Tex. Civ. App.) 288 S. W. 471; Millers' Indemnity Underwriters v. Schrieber (Tex. Civ. App.) 240 S. W. 963.

Further discussion is deemed unnecessary; the judgment has been reversed and the cause remanded.

Reversed and remanded.