## TRINITY UNIVERSAL INS. CO. v. WALKER.
### No. 9639.

Court of Civil Appeals of Texas. Austin.
June 4, 1947.

Rehearing Denied June 25, 1947.

A. E. Wood, of Austin, V. B. Goar, of Johnson City, and Coleman Gay, of Austin, for appellant.

A. W. Moursund, III, of Johnson City, and Will Mann Richardson and Ralph W. Yarborough, both of Austin, for appellee.

HUGHES, Justice.

This is a workman's compensation case. Mrs. E. D. Walker, Sr., the widow of E. D. Walker, Sr., is appellee, and the Trinity

Universal Insurance Company is appellant. E. D. Walker, Sr., suffered a collapse while employed on a construction job on the Wesley West ranch in Blanco County, Texas, September 5, 1945. He died the following March 15.

Appellant urged a plea in abatement on the ground that appellee did not file notice with the Industrial Accident Board that she would not abide by the award of the Board, as required by Sec. 5, Art. 8307, Vernon's Ann.Civ.St.

On July 20, 1946, the following notice was filed with the Industrial Accident Board by E. D. Walker, Jr., the son of appellee and deceased:

"July 20, 1946.
"E. D. Walker, Employee vs "Leslie Crockett Construction Company, Employer.
"Industrial Accident Board,
Austin, Texas.
"Gentlemen:

"This is to notify you that Mrs. E. D. Walker is not willing to, and does not consent to, and will not abide by the final ruling, decision and award made by the Industrial Accident Board, under date of July 1, 1946, in favor of the Trinity Universal Insurance Company, and she will within twenty days from date of service file suit in a court of competent jurisdiction, for the purpose of setting aside said ruling, decision and award.

"Yours very truly,

"Service of the above notice is hereby acknowledged this 20th day of July, A.D. 1946.
"(Signed) Ruby Otto
"Secretary.
"(Stamped)
"Industrial Accident Board, State of Texas.
"Received July 20, 1946."

 Appellee testified that because of her physical inability she requested her son, E. D. Walker, Jr., who lived in Austin, Texas, to file notice of dissatisfaction with the Board, which was done and appellee notified of such filing. The notice was signed by E. D. Walker, Jr., in his own name, and was so signed after a conversa-

tion by him with Mrs. Ruby Otto, Secretary of the Industrial Accident Board. The statute referred to above does not require such notice to be signed at all; and, in our opinion, the signature of E. D. Walker, Jr., neither adds to nor takes from such notice. The filing of this notice by E. D. Walker, Jr., under instructions from his mother, was equivalent to filing by her, since he was her agent, and under the most elementary principles of agency the act of the duly authorized agent was the act of the principal. This point is overruled.

All of appellant's remaining points, except one, attack the following findings of the jury as being without any support in the evidence, or as being against the overwhelming weight of the evidence.

a. That E. D. Walker, Sr., suffered a heat stroke or heat exhaustion on September 5, 1945.

b. That the heat stroke or heat exhaustion of September 5, 1945, was the producing cause of death on March 15, 1946.

c. That on September 5, 1945, E. D. Walker, Sr., was exposed to greater hazard of heat stroke or heat exhaustion than was the public generally.

These points require a resume of the testimony.

E. D. Walker, Sr., was 59 years of age and was apparently in good health at the time he collapsed on September 5, 1945. At that time he was foreman in charge of a construction crew of about 20 men, consisting of 15 Negro men and five white boys. The work being done was in laying a system of drainage pipe in ditches and in water-proofing the basement of the Wesley West ranch house in Blanco County. Mr. Walker did more than merely direct and supervise. He actually got down into the ditches, and demonstrated how the pipe was to be fitted; he also assisted the men in swinging sections of the concrete pipe into place by means of a chain hoist. The crew began work on the morning of September 5 at 7 a. m. The sun was already up and the sky was clear, and there was no wind. At 7:30 a. m. most of the white workers and part of the Negroes had their shirts off because of the heat. At about

9:30 a. m. one of the 17-year old white workmen started to lay fire brick around a water cutoff, which was in the open, unprotected from the sun. In order to show this young man how to lay the brick, Mr. Walker laid the first round in the bottom of the hole, and in doing so he was required to sit on the ground, or stand in the hole and stoop over with his face close to the ground. He worked at this for about 30 minutes. When he stopped he was sweating profusely; and at that time he stated that he was hot and felt like he was burning up. He then went to the other side of the building and helped the Negro laborers pull on the chain hoist so as to swing a section of concrete pipe, weighing between 250 and 300 pounds, into the ditch. After this was done Mr. Walker came back and complained again of the heat, saying that "he was burning up and then he would get cold, and then he would burn up again, and then get cold." He was dizzy and his face was red. Mr. Walker stated to his employer, "I feel like the blood is rushing from one side of my head to the other." He then sat down in the shade of a tree and remained there without moving or talking until he was taken to Johnson City at about noon. From Johnson City, and on the same day, he was taken to the Hospital in the Hills at Blanco, being admitted there about 3:30, in a semicomatose condition.

At the hospital Dr. John Flannery made a tentative diagnosis of heat stroke and treated him accordingly. Under this treatment his condition improved. The following day Mr. Walker was taken to Austin and was there examined by Dr. Howard Granberry, who stated that he was getting over a heat stroke or heat exhaustion; that he had treated many cases of this sort, and that this was a typical case. Dr. Granberry then sent Mr. Walker to Seton Hospital, where it was found that the patient had a temperature of about 100° on admission. Ice was used to reduce his fever and stimulants administered until he was discharged as an ambulatory patient. After release from Seton Hospital, Mr. Walker was never able to satisfactorily perform his duties. He was mentally alert until the 18th day

of November, 1945, at which time he suffered a stroke of paralysis. On February 17, 1946, Mr. Walker was taken to John Sealy Hospital at Galveston, and it was determined that he had a brain tumor, and that an operation was required, which was performed February 28; and on March 15, 1946, Mr. Walker died; the immediate cause of his death being blood clots in the lungs, which resulted from the brain operation.

Dr. H. A. Scott testified that in his opinion heat exhaustion and mild heat stroke were the same thing and that Mr. Walker had suffered a heat exhaustion or mild heat stroke on September 5, 1945.

The highest temperature reached during the day at the official weather bureau station at Blanco in Blanco County, on September 5 was 96° F. The temperature at 10 a. m. in Austin was 85° F, and at 11 o'clock a. m. was 87° F, and in San Antonio at 10 a. m. was 84° F, and at 11 a. m. was 85° F. The Austin temperatures were taken 25 minutes after the hour and the San Antonio temperatures were taken 35 minutes before the hour. The times shown are Central Standard times. Appellant pleaded, but did not prove, that the maximum temperature in Austin on September 5 was 91° F.

Dr. David Wade, a witness for appellant, testified that age plays a "considerable part in heat stroke, in that an elderly person can stand less heat than younger people." He agreed with the Metropolitan Life Insurance statistics which showed that 75% of deaths resulting from heat strokes occur in patients over 60 years of age. Drs. H. A. Scott and Howard Granberry gave similar testimony.

Prior to Mr. Walker's collapse on September 5, one of the Negro workmen had fallen out from excessive heat, but was able to return to work the following day. Dr. Granberry testified that the Negroid race could stand more heat than white races, and was less susceptible to heat exhaustion.

Dr. Granberry testified that heat stroke and heat exhaustion always harmed the physical structure of the body, and that

anything which harms the physical structure of the body, "would not do the brain any good. That during heat stroke or heat exhaustion the brain swells, the intra-cranial pressure increases and blood rushes to the brain."

Dr. H. A. Scott testified that the effect of heat exhaustion on Mr. E. D. Walker, Sr., was such that "something happened in that man's brain at that time from which he never recovered." That it could have been an aggravation and the start of a sudden growth of a tumor that may have existed at the time of the collapse on September 5; and that such heat stroke or heat exhaustion therefore caused or aggravated the brain tumor later found in the brain of Mr. E. D. Walker, Sr. That permanent harm results to the body from heat stroke or heat exhaustion, and that the heat stroke suffered by Mr. Walker increased the intra-cranial pressure which could have resulted in ruptured blood vessels that in turn irritated the growth of the tumor. That external factors sometime arouse dormant and inactive tumors and cause them to become malignant and active. He testified positively that the heat stroke and heat exhaustion suffered by Mr. Walker caused or contributed to his death.

Dr. David Wade stated that tumors arise from the sudden deviation in the manner in which tissues normally grow, and that an embryonic tumor could be at rest in the brain from birth until some unknown factor causes what is otherwise normal cell growth to run wild and cause a tumor. None of the doctor witnesses professed to know the cause of tumors.

Dr. Howard Granberry testified that even if Mr. Walker had a heat stroke on September 5 that he nevertheless died of a brain tumor; and Dr. Wade testified that a person suffering from the type of tumor which Mr. Walker had was in a fatal condition with no chance for recovery.

Dr. Howard Granberry testified that he had known Mr. Walker for about 10 years, and that he saw him a patient two or three days after September 5, and that he then looked as though he was getting the tail end of a heat stroke, but that after reading Dr. Snodgrass's report of the operation and autopsy he said, "that being the case, I think I missed my diagnosis. I was as honest about it as I could be. I could have been dealing with a brain tumor at that time but did not know it. It had not shown itself enough to be manifested."

Dr. David Wade testified that he felt that Mr. Walker's collapse on September 5 was caused by the brain tumor and that in his opinion Mr. Walker did not suffer a heat stroke or heat exhaustion at that time. Dr. Samuel Snodgrass expressed the same opinion.

Dr. Granberry also testified that if Mr. Walker suffered a heat stroke when the temperature did not exceed 85°, it was a very mild one. Dr. Wade testified positively that a heat stroke could not occur at a temperature of 85 or 90°, or in fact at any temperature below the body temperature of 98.6°. Dr. Scott testified that the lower the temperature the less likelihood of heat stroke or heat exhaustion.

There was considerable cross-examination of the doctors by reference to medical text books and periodicals. Disagreement with the various authors was frequently expressed.

In the above summary we have, no doubt, omitted much that one party or the other would like included. It would be impractical to further lengthen the statement of the evidence. In reaching our conclusions, however, we have carefully considered the entire statement of facts.

It has been shown that the medical testimony is far from being conclusive; in fact it reflects a paucity of knowledge upon the subjects involved. The jury was not limited to the opinions of the doctors but was privileged to consider outside circumstances and conditions. Texas Employers' Ins. Ass'n v. Moore, Tex.Civ.App., 279 S.W. 516. In particular it presumably took into account the age of deceased, his apparent good health prior to September 5, the atmospheric condition on this date, physical exertion of deceased, sweating and other physical disturbance, his treat-

ment for heat exhaustion and favorable reaction thereto. Our conclusion upon the evidence as a whole is that the proof preponderates in favor of the verdict that deceased suffered a heat stroke or heat prostration on September 5, 1945.

The same conclusion as to such stroke or prostration being a contributing cause of his death has been reached. The cause of tumor of the brain is unknown. It may lie dormant in the brain from birth until something causes its growth, which when once started, appears to be very rapid. It seems to be an accepted fact that heat stroke or prostration causes disturbances within the brain and since such disturbances can do no good to the brain, it seems very reasonable that harm results and not at all unlikely that the tumor was thus aggravated into rapid growth. At any rate there was ample evidence from which the jury could so find and we are bound thereby.

That deceased was exposed to greater hazards to heat stroke and heat exhaustion than the public generally is beyond question. The public generally was not doing the same character of work as deceased nor under similar conditions. American General Ins. Co. v. Webster, Tex. Civ.App., 118 S.W.2d 1082, Writ of Error Dismissed.

Finally we are asked to hold, in view of the testimony that Mr. Walker had a fast growing malignant tumor which would have caused his death within one year following his collapse, that the compensation recoverable should be so limited. The statute, itself, refutes this contention, "provided the right in such beneficiary or beneficiaries to recover compensation for death be determined by the facts that exist at the date of the death of the deceased and that said right be a complete, absolute and vested one." Sec. 8a, Art. 8306, Vernon's Ann.Civ.St. If this right is vested it cannot be divested by looking into the future and ascertaining the life expectancy of an employee because the statute does not so provide.

The judgment is affirmed.

Affirmed.