**TEXAS GENERAL INDEMNITY CO. v. LONGLOIS.**

No. 13906.

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1953.

Rehearing Denied Feb. 13, 1953.

James Little, Big Spring, Tex., for appellant.

George Finley and John R. Lee, Kermit, Tex., for appellee.

Before HOLMES, RUSSELL, and STRUM, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment of the district court for the plaintiff below, entered upon the verdict of a jury, in a direct action against the insurance company to recover under the workmen's compensation law of Texas, Revised Civil Statutes of Texas, Article 8306 et seq., Vernon's Ann. Civ.St. art. 8306 et seq. The complaint alleged that, during the regular course of his employment with Stanolind Oil and Gas Company, the appellee received an injury resulting in total and permanent disability, and that his failure to file notice and claim for compensation within the statutory period of six months was occasioned and excused by good cause. The jury, in awarding the verdict, found appellee to be seventy per cent incapacitated, and that his delay in filing notice was justified by good cause.

The decisive and material facts are that the appellee, on or about May 6, 1949, sustained injuries while performing the duties of a roustabout for the Stanolind Company, which was insured by the appellant. While tightening a valve with a heavy wrench, a sudden sharp pain in his chest caused him to lose his equilibrium and fall against a pumping unit. The company supervisor was given actual notice of the accident, and formal notice and request for medical attention were filed with the company three days after the accident. On the day following the injury, the appellee was assigned duties of a nonstrenuous nature, and several days later was sent for treatment to the company's physician, who prescribed a complete rest of several weeks. Upon his own insistence, however, appellee was issued a light-duty slip, with instructions to return each day for therapy. Subsequently, he requested and received a one-week's vacation in order to regain some of his strength; and, on his return, he was again sent to the company's physician, who discovered a serious heart ailment and advised him that his condition prevented further strenuous activity. Appellee's name was then placed on the sick roster until September, 1949, at which time his salary and employment were terminated.

During a consultation with the company's superintendent, after his discharge, the appellee's insurance policy was discussed, and the superintendent advised him "not to worry"; that "everything would be taken care of." At this time appellee completed certain insurance forms that were furnished by the company; and, on a later occasion, the president of the employees' bargaining union, Walker, and a company supervisor, upon examining the forms, made substantially the same promises. In still another conference with Walker, the latter told appellee that he "did not have a care in the world," and that he "would be taken care of." During a discussion of his case with the labor superintendent, the latter patted him on the back and told him that he had nothing to worry about.

In December, 1949, the appellee requested the Industrial Relations Superintendent, Johnson, to write the Veterans Administration in his behalf. Johnson agreed to do so, and suggested that appellee not employ an attorney, as this would necessitate the payment of an attorney's fee, and for appellee "just to wait." In a further conversation with the superintendent and another official of the company, appellee testified that he was left with the impression that he was to be reemployed or be paid the insurance due him. In late December, 1949, Johnson advised appellee by telephone that "everything would work out very good." In February, 1950, appellee presented his claim to the company's grievance board, and was further encouraged to believe that he was to be reemployed or given his insurance.

In April, 1950, after being advised that the entire matter had been disposed of, appellee employed an attorney, but requested him to take no action until positively apprised of the status of his claim and possibility of reemployment. On April 28, 1950, while his attorney was en route to a Dallas hospital, appellee narrated the foregoing details to him, and requested him to prosecute the claim. After undergoing a serious operation, the attorney was confined to his bed until July 6, 1950. On June 5, 1950, the appellee, with the aid of the attorney's wife, secured the compensation forms from her husband's office. Thereafter, being still in a weakened condition, the attorney referred the case to two other lawyers, who

contacted appellee, checked the completed forms, and filed same with the Industrial Accident Board. The Board received the claim on July 3, 1950, and rejected it on September 18, 1950.

■ . The appellant contends that there is insufficient evidence to show good cause for failure to file the claim within the six-month period. After a careful analysis of the evidence, we are unable to agree with this contention. From the date of the accident until April 28, 1950, the appellee's reliance on the diligence of the employer's agents in securing his compensation was intermittently strengthened by their actions and representations. This is effectively illustrated by the testimony of Johnson, the industrial relations superintendent, that he had assisted a thousand employees in recovering their compensation, thus negating the possibility that such reliance was novel or unexpected. He admitted that he believed the appellee had relied on his statements. If the appellee had been indolent or dilatory in the pursuit of his rights, we might feel compelled to disturb the verdict as a matter of law; but we are impressed with his vigorous and persistent efforts to keep the claim alive in the minds of the company's officials.

■ The appellant's contention that there is insufficient evidence to establish a causal connection between the appellee's heart condition and the accident seems to us to be not well taken. The appellee also relied on aggravation of pre-existing injuries or diseases, and the court adequately instructed the jury concerning the compensability of an aggravated disability. For a period of two years, the appellee had been in the continuous employment of the Stanolind Company, and his reputation was that of a conscientious, uncomplaining, and capable worker. The testimony indicates that he had on no occasion, prior to the accident, experienced such pains as were subsequently diagnosed to be symptomatic of cardiac ailment. On two occasions preceding the accident, he had been examined by competent physicians, one examination being by the company's own doctor; and neither examination revealed a similar disability. A medical witness, who had studied the appellee's

condition, testified that in his opinion it was the result of the accident and that, although his heart was possibly diseased prior thereto, it was functioning adequately, and that the excessive strain at the time of the accident was the precipitating cause. Pre-existing diseases or ailments increasing susceptibility to injury do not constitute a valid defense so long as the disability is accelerated by an accidental injury. Such a causal relation has been amply shown in this case.

Appellant urges that good cause, assuming that it existed at all, unquestionably ceased after June 5, 1950. We think this inference is erroneous and unsupported by the evidence. From the testimony, it is logical to assume that appellee's attorney, aside from the fact that he and appellee were personal friends, was an able and conscientious lawyer, and that, but for his confinement during his convalescence, he would promptly have processed the claim. In fact, it appears from the evidence that his efforts to obtain the forms for the appellee and to have them filed were, considering his condition, beyond the call of ordinary diligence.

■ The burden of showing good cause is relieved by the showing of action consistent with that of ordinary prudence, that is, whether the claim has been prosecuted with a diligence which an ordinarily prudent person under similar circumstances would exercise in his own behalf. The statute does not undertake the task of defining "good cause"; therefore, whether in the particular case the facts surrounding the delay constitute a reasonable cause becomes a question of fact unless the evidence is so conclusive as to preclude a reasonable inference justifying it. The jury were warranted, from the evidence, in finding as a fact that there was good cause for the delay, and that the appellee, under the circumstances, did not violate the requirement of reasonable prudence.

■ Under the Texas decisions, the law favors liberality of construction of the workmen's compensation act to the extent that any reasonable doubt should be resolved in favor of the claimant. Reid v. Maryland Casualty Co., 5 Cir., 63 F.2d 10; Hicks v. Georgia Casualty Co., 5 Cir., 63 F.

2d 157; Brodtmann v. Zurich General Accident and Liability Ins. Co., Ltd., 5 Cir., 90 F.2d 1; Massachusetts Bonding & Ins. Co. v. Massey, 5 Cir., 123 F.2d 447; Royal Indemnity Co. v. Earles, 5 Cir., 153 F.2d 933; Travelers Ins. Co. v. McKain, 5 Cir., 186 F.2d 273; Millers' Indemnity Underwriters v. Schrieber, Tex.Civ.App., 240 S.W. 963; Texas Employers' Ins. Association v. McGrady, Tex.Civ.App., 296 S.W. 920; Norwich Union Indemnity Co. v. Smith, Tex.Com.App., 12 S.W.2d 558; Williams v. Lumbermen's Reciprocal Association, Tex.Civ.App., 18 S.W.2d 1093; Fidelity Union Casualty Co. v. Martin, Tex.Civ.App., 45 S.W.2d 682; Theago v. Royal Indemnity Ins. Co., Tex.Civ.App., 70 S.W.2d 473; Travelers Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354; Security Mutual Casualty Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552.

We find no reversible error in the record, and the judgment appealed from is affirmed.

Affirmed.