Martha L. BISHOP, Appellant,

v.

LUMBERMENS MUTUAL CASUALTY
COMPANY, Appellee.

No. 15683.

United States Court of Appeals
Fifth Circuit.

Dec. 21, 1955.

Rehearing Denied Jan. 18, 1956.

C. Coit Mock, Wichita Falls, Tex., Mock, Richie & Spell, Wichita Falls, Tex., for appellant.

H. W. Fillmore, Wichita Falls, Tex., Bullington, Humphrey, Humphrey & Fillmore, Wichita Falls, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Brought by the widow of Seth Bishop, deceased, under the Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. Tex. art. 8306 et seq., the suit was for the statutory benefits which it was claimed were provided for his death. The claim was that while employed by Cicero-Smith Lumber Co., defendant's insured, and while working in the course of that employment on a house belonging to one Pace who had engaged the lumber company to furnish the labor

and material for it, her husband sustained accidental injuries resulting in his death and entitling her to the compensation sued for.

Defendant admitted that under an arrangement with Pace, that he was to repay the lumber company therefor, it had furnished Pace the material and had paid the wages of Bishop and Doyle who as carpenters worked on Pace's job. Asserting, however, that these two were merely recommended by it to, and were hired by, Pace as his own employees, it denied (1) that Bishop was its employee, and (2) that his death was accidental and compensable. In addition, it pleaded affirmatively that the deceased was extremely heavy and overweight and that his death resulted not from an accidental injury but from a diseased heart and heart failure therefrom.

On the issues thus joined, the cause was tried to a jury, and at the conclusion of the testimony of plaintiff's witnesses, Mrs. Bishop,[1] Doyle,[2] Bishop's co-worker, Pace,[3] upon whose home they worked, and Dr. Parnell,[4] the district judge, on defendant's motion, instructed[5] a verdict for defendant and entered judgment accordingly.

■■ Appealing therefrom, plaintiff is here insisting that there was sufficient evidence of probative force to take the case to the jury on the issues of employment and accidental injury. In support, summarizing the evidence, as we have set it out in note 1, *supra*, and citing cases[6] declaring and applying the

---

1. Viewed in the light most favorable to plaintiff, the testimony of Mrs. Bishop was that Seth Bishop had been doing carpenter work for the past eighteen years; that he had been working for Cicero-Smith Lumber Co. for the past several years preceding his death; and that he was paid $2.00 an hour for the two days preceding his death and $2.00 an hour, figured in hours and minutes, to the very time of his death, by the Cicero-Smith Lumber Company.

2. Mr. Doyle's testimony was that he was a carpenter and had worked with Seth Bishop doing carpenter work for several years prior to Bishop's death; that he was working with Bishop on a house belonging to Melvin Pace on the date of his death; that Cicero-Smith Lumber Company was paying him and Bishop on the day of Bishop's death; that Mr. Halcom, manager of Cicero-Smith Lumber Company, contacted the carpenters to do the work on Pace's house; and that he did not know of any agreements between Pace and the lumber company. He further testified as to strenuous work performed by Bishop immediately before he died, among which was driving 16 penny nails into 2x4 lumber, crawling ladders, sawing 2x4 lumber, lifting and nailing 4x8 sheets of sheetrock weighing in excess of sixty pounds on the ceiling, etc.; that after such work, Bishop vomited and complained of pain in his chest and left arm; that Bishop collapsed and died on the way to the hospital; and that Bishop had complained of "spells" and pain in his chest, radiating into his left arm, on other occasions in recent months.

3. Mr. Pace testified: that Mr. Halcom was the manager of Cicero-Smith Lumber Company; that he contacted Halcom to get the addition put on his home; that Halcom sent the carpenters and material to his home; that he (Pace) did not select nor pay the carpenters; that he just gave the carpenters the general idea of what was to be done; and that when the work was finished, he said Cicero-Smith Lumber Co.

4. Dr. Parnell expressed an unqualified opinion that Bishop died of a coronary occlusion; that the work performed would be sufficient to precipitate the heart attack that might not otherwise have occurred; and that overexercise did bring on the heart attack that caused his death.

5. "Gentlemen of the Jury, there is no case here for the plaintiff. This compensation law applies to employers. No testimony that he was employed by the Cicero-Smith Lumber Company, which was the insured, in which this defendant was the insurer, nor is there any testimony here that would support the theory that this man died otherwise than from a disease which he had."

6. Latta v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 243 S.W.2d 949; Moffett v. Texas Employers' Ins. Ass'n, Tex.Civ. App., 217 S.W.2d 142; Texas Employers' Ins. Ass'n v. Talmadge, Tex.Civ.App.,

controlling principles, she urges upon us that the judgment must be reversed.

Appellee, on its part, citing and relying in support of his primary contention on Maryland Casualty Co. v. Gray, 5 Cir., 103 F.2d 493, vigorously urges upon us that here, as there, the injured person was not an employee of the lumber company.

It is true that in that case we did hold that the plaintiff, who was hurt while engaged as a carpenter in building a house for the owner, was not the employee of one Rice, the owner of a lumber yard, who had agreed to furnish part of the material to the owner and to advance money for his payroll. But the facts in that case, as stated in the opinion,[7] completely distinguish it and the authorities it cites from this one.

In support of its alternative contention, that plaintiff's evidence was not sufficient to take the case from the jury on the issue of accidental injury, but, on the contrary, showed as matter of law that Bishop's death was not compensable, appellee, citing and relying on Houston Fire & Casualty Ins. Co. v. Biber, Tex.Civ.App., 146 S.W.2d 442,

points to the testimony of Doyle, that the activity on the date in question was "just average like we had been working", and to the medical testimony as speculative and lacking in probative force.

While we can and do agree that plaintiff's testimony was far from conclusive, we cannot agree that it was so lacking in probative force as to require an instructed verdict on this issue. As correctly pointed out by appellant, the term "injury" as defined in the compensation statute, Art. 8306, Sec. 20 has been further elucidated in the decisions to include " 'the incitement, acceleration or aggravation of any disease previously or subsequently existing by reason of such damage or harm to the physical structure of the body.' " Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W.2d 738, 742.[8] Under the teachings of these authorities, plaintiff's evidence, while not conclusive, was certainly ample to take her case to the jury on the issue of whether her husband's death was compensable.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent herewith.

256 S.W.2d 945, and Texas General Indemnity Co. v. Longlois, 5 Cir., 200 F. 2d 780.

7. " * * * This contract apparently bound Rice to do a turnkey job, but he *actually did no more than furnish certain building materials for the house and money with which to pay the various workers employed by Moore.* * *
"*Among the contracts that Moore had with various workers was one with Wash Gray, a carpenter.* Gray agreed to do the carpenter work for a consideration of $300 to be paid by Moore in groceries and $335 to be paid in cash by Rice. The work on the house started and Gray received groceries from Moore and money from Rice until such time as he was discharged by Moore.
" * * * *The money that Rice paid to Gray was paid only after Moore had*

*authorized the payment and notified Rice of the amount to be paid. Moore hired Gray and it was he that gave the instructions about the work. It was Moore that discharged Gray and took the plans and specifications from him and thereupon hired a new carpenter.*

\* \* \* \* \*

"*Rice did not hire, supervise or discharge the workers employed on the house. This was done by Moore.* * *"
(Emphasis supplied.)

8. Cf. also Anchor Cas. Co. v. Wolff, 5 Cir., 181 F.2d 741; Traders & General Ins. Co. v. Booth, Tex.Civ.App., 268 S.W.2d 539; Brodtmann v. Zurich General Accident & Liability Ins. Co., 5 Cir., 90 F.2d 1; Strawn v. Travelers Ins. Co., 5 Cir., 200 F.2d 778; Hartford Accident & Indemnity Co. v. Jones, 5 Cir., 80 F.2d 680.