**Ada B. WHITTEN, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COM-PANY, Appellee.**

**No. 16946.**

United States Court of Appeals
Fifth Circuit.

July 15, 1958.

Rehearing Denied Aug. 11, 1958.

Bill J. Sanders, Beaumont, Tex., for appellant.

**700**

Marcus, Weller & Evans, Beaumont, Tex., David C. Marcus, Beaumont, Tex., of counsel, for appellee.

Before RIVES, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Mrs. Ada B. Whitten, appellant, widow of H. J. Whitten, brought suit against Liberty Mutual Insurance Company (insurance carrier of Wrecking Corporation of America) in the District Court for the Eastern District of Texas to recover death benefits under the Workmen's Compensation Law of Texas, Vernon's Annotated Civil Statutes, § 8306 et seq. Upon conclusion of the evidence offered by appellant, the trial court granted appellee's motion for a directed verdict and judgment was entered in favor of the appellee. The question presented is whether the trial court erred in directing a verdict for the defendant.

H. J. Whitten retired from work in December, 1954. Two years later, at the age of sixty-eight, he decided to go back to work. During the period from March 22, 1956, to April 20, 1956, he was employed intermittently by the Wrecking Corporation of America. His employment during this period totaled four days. His duties were to lift timbers of various sizes, carry them to a work-bench, pull out any nails with a crowbar and hammer, and then re-stack the timbers. April 20, 1956, he became ill and quit work. August 5, 1956, he died of lung cancer.

Appellant's theory of the case is that her husband had a small cancer of the prostate that was aggravated by the activity and exertion incident to his duties performed for the Wrecking Corporation of America from March 22, 1956, to April 20, 1956. She contends that the activity and exertion caused the malignancy to metastasize to the lung, resulting in the lung cancer from which he died some three and a half months after the last day he worked for the Wrecking Corporation.

■■■ There is no dispute over the law. Appellant does not have to show that her husband was the victim of an accident. Fidelity and Casualty Company of New York v. Neas, 5 Cir., 1937, 93 F.2d 137; Texas Employers' Insurance Association v. Agan, Tex.Civ.App. 1952, 252 S.W.2d 743. And, the Workmen's Compensation Law of Texas applies to the aggravation of an existing disease. Bishop v. Lumbermen's Mutual Casualty Co., 5 Cir., 1956, 228 F.2d 1. In such cases, however, in order to prove aggravation of the existing disease by injury, it is essential to establish that the disease existed prior to the injury, perceptible damage was done to it by the injury, and the subsequent course of the disease was accelerated. There is no causal connection between an injury and death when "the additional assumptions necessary to the establishment of a causal connection between proven fact or permissible inference and the death of the deceased can be reached only by piling presumption upon presumption and drawing inference from inference". General Accident, Fire & Life Assur. Corp. v. Perry, Tex.Civ.App., 264 S.W.2d 198, 200 (error ref., N.R.E.). Texas Employers' Insurance Association v. Young, Tex.Civ.App., 231 S.W.2d 483, 486, involved over-exertion that allegedly caused a cerebral hemorrhage. The court said: "The contention of appellant that the evidence is insufficient to sustain the findings of the jury is sustained. The burden of proof rested upon claimants to establish that the deceased over-exerted himself, as alleged, and this was a producing cause of the hemorrhage and death. It is to be observed that under the assumed facts incorporated in the questions propounded to the physicians they could not or would not diagnose the producing cause of this hemorrhage other than to say it might have or could have resulted from over-exertion. They likewise enumerated various strains and stresses which might or could have produced such a hemorrhage. The finding that he did over-exert himself while engaged 'in firing a boiler and night-watching' in the absence of testimony which would disclose what he was doing or had done shortly prior to

the stroke must necessarily rest upon speculation and conjecture."

 There is no evidence in the record to show that Whitten ever had cancer of the prostate during the time he was working for Wrecking Corporation of America; no evidence connecting the *assumed* cancer of the prostate with the lung cancer; no evidence showing that over-exertion would cause a cancer to metastasize.[1] Appellant's medical evidence does not go beyond "speculation and conjecture". One physician, an osteopath, testified for appellant. He had treated Whitten for general discomfort in the lower abdomen. He had not treated Whitten for lung cancer and he saw nothing to indicate cancer at the time he treated Whitten. He did not testify as an expert on cancer. In testifying he shied at going beyond the point of saying that there was a "possibility" that Whitten's over-exertion metastasized the assumed cancer of the prostate and was a producing cause of death.[2]

We hold that there was no evidence in the record on which the jury could base a finding that there was a causal connection between Whitten's death and his employment by appellee.

The judgment is

Affirmed.

---

1. Cancer cases under the Workmen's Compensation Law: Trinity Universal Ins. Co. v. Walker, Tex.Civ.App., 203 S.W.2d 308; Travelers Insurance Company v. Rowand, 5 Cir., 197 F.2d 283. See, also, Russell and Clark, Medico-Legal Consideration of Trauma and Other External Influences in Relationship to Cancer, 6 Vanderbilt L.Rev. 868 (1953).

2. Dr. W. M. Stevenson, testified as follows:

"The Court: What we are trying to find out in this case is your opinion as to the cause of this man's death, whether he died from cancer of the lung standing alone, or whether that excited his cancer, or whether it aggravated the cancer to the extent that it caused it to metastasize and kill him? That is, simply, the whole problem.

"The Witness: It is possible.

"The Court: Is it reasonably probable in the light of reasonable degree of medical certainty?

"The Witness: I think it is possible.

"The Court: No, I don't mean possible. Anything is possible. But do you have an opinion based upon a reasonable degree of medical certainty that this is what happened, not whether it is possible, but is it probable in the light of medical knowledge to a reasonable degree of medical certainty?

"The Witness: If this man exerted himself, why—

"The Court: Talk louder.

"The Witness:—it is probable.

"The Court: Probable that what?

"The Witness: That the cancer contributed one percent—I have forgotten the exact question.

"The Court: Well, I am getting down to your objection. I did not detect that latter part of the question. Was it a cause? Was it a producing cause of death by cancer—was this exertion a producing cause, a cause without which death would have occurred?

"The Witness: No.

"The Court: From cancer of the lung?

"The Witness: No." Testimony and Proceedings, pp. 101–103.