## ÆTNA CASUALTY & SURETY CO. v. SPARROW.

### No. 3328.

Court of Civil Appeals of Texas. Beaumont.
Oct. 20, 1938.

Rehearing Denied Nov. 30, 1938.

Gordon, Lawhon, Sharfstein & Bell, of Beaumont, for appellant.

Elton Cruse, of Beaumont, for appellee.

WALKER, Chief Justice.

This is a Workmen's Compensation case. Hay's Sandwich Shop, in the city of Beaumont, was the employer; appellant, Ætna Casualty & Surety Company, the compensation carrier; and Napoleon Sparrow, decd., a negro boy about fifteen years old, the employee. The case was filed in the lower court by Steve Sparrow, individually and

as next friend for the minor brothers and sisters of the deceased, as an appeal from the adverse award of the Industrial Accident Board.

.The jury found that on or about the 1st day of March, 1936, while in the course of his employment with Hay's Sandwich Shop, Napoleon Sparrow sustained an accidental, personal injury which was the producing cause of his death, and that $3 per week was his average weekly wage. Facts were found supporting the claim of dependency by the minor brothers and sisters, and that appellees were entitled to a lump sum settlement. It was also found that the death of Napoleon Sparrow "was not the result of occupational disease"; that he "was required to perform his duties in a greater amount of rain and wet weather than were members of the public generally"; that, while on duty at Hay's Sandwich Shop, he "was subjected to a greater hazard in reference to sudden and marked changes in temperature than were members of the public generally"; that "the sudden exposure to the temperature changes, sustained by Napoleon Sparrow on or about March 1, 1936, while on duty at Hay's Sandwich Shop, was the primary cause of his subsequent death from tuberculosis"; and that "the tuberculosis from which Napoleon Sparrow died did not solely result from hereditary causes." On the verdict of the jury, judgment was rendered in favor of appellees against appellant for the sum of $2177.37 with interest at six (6%) per cent per annum from the 9th day of September, 1937, the date of the judgment. From the judgment appellant has duly prosecuted its appeal to this court.

### Opinion.

We sustain appellant's proposition that, on the undisputed evidence, it was entitled to an instructed verdict against appellees. We quote from the testimony of appellees' expert witness, Dr. S. J. Lewis:

"A. I was called to see Napoleon Sparrow, the colored boy about 15 years old— I just judged him to be that old—about nine thirty P. M. November 6, 1936. The patient was at home propped up in bed, evidently in great respiratory distress. Patient was having great difficulty in breathing and was semi-comitose or stuporous; had some fever and was sweating very profusely; his breathing was abdominal in type instead of normal costo-abdominal respiration. That is, he wasn't breathing with his chest

very much. Examination of the chest with stethoscope revealed crepitant rales throughout both lungs. There was some impairment of resonance or percussion throughout both lungs but no area of marked dullness or flatness. As the patient was having great difficulty in breathing and alternate periods of stupor and restlessness and nervousness I administered a respiratory stimulant and mild sedative and informed the parents that I did not think the patient would live over a few hours though he might."

"My diagnosis was that he had what the average fellows know as galloping consumption, what we call acute miliary tuberculosis."

For the purpose of this opinion we adopt, as established by the evidence, the facts assumed by appellees in the following hypothetical question propounded by them to their witness, Dr. S. J. Lewis: "Now, Doctor, assuming that this negro, Napoleon Sparrow, at the time you saw him was about 15 years of age, that he had been attending one of the negro high schools here, being in the 9th grade, attending school regularly, and that in addition to the school work, that for several months before March 1st, 1936, he was also employed and working around the Hay's Sandwich Stand, located out on the Port Arthur Road near the intersection of Washington Boulevard where he put in some 40 hours a week working around that stand, a good deal of the work being inside of the hot kitchen in there, cleaning up things, and then that he had work that called him outside at frequent intervals, like to pick up the paper and to stack the beer bottles and soda pop bottles on the outside, and that his work required him to go at frequent intervals from the hot kitchen to the outside where it would be much cooler, and even cold, and often raining, and that about the last day he worked there along in March 1936 that he contracted a cold and that this cold developed into flu and pneumonia and that he never did recover to where he could get up and go back to school or go back to his work. and that gradually or eventually along in November, November 7 of 1936, when you saw him, he was in the condition that you found him; Doctor, taking all those facts that I have stated as true, I'll ask you this hypothetical question which is: Whether or not you would say that there was a probable causal connection between the conditions of his work, the exposure and so on as I have related them to you

and the condition you found him in at the time you saw him and of his death?" To that question, the witness answered: "A. Well, I think that if the assumptions are correct, that this boy had respiratory infection, pneumonia, or some other thing, that this is of course more liable to be brought on after exposure and changing from one temperature to another; we know that predisposes toward respiratory infection, and such respiratory infection predisposes toward tuberculosis, it is reasonable to think that that could have happened."

We make the following additional quotation from the testimony of Dr. Lewis:

"Q. Doctor, what is the usual history as to how or why these inactive or dormant tubercular germs get out and develop into galloping tuberculosis or other tuberculosis that kills people? A. Well, we think, of course, the first thing is heredity; the second is environment, amount of work, overwork, exposure, and nutrition that these people have.

"Q. Overwork and exposure are recognized as being among the substantial causes of the development of active tuberculosis? A. Well, there is no question about that.

"Cross-examination by Mr. Bell:

"Q. Doctor, did your examination that night disclose anything other than at that particular time the patient was in a rather advanced stage of tuberculosis? A. That's what I thought about it.

"Q. Now, you say that the probably greatest cause of the greatest amount of tuberculosis is heredity? A. No; you misunderstood me. I said there is hereditary factor. Some people have more tendency toward tuberculosis than others.

"Q. Where there is a hereditary tendency toward tuberculosis in the family, isn't it probable that a member of that family would have tuberculosis regardless of the conditions under which they lived, particularly in a negro family? A. Well, if there is one tubercular in the family, the chances would be greater under any circumstances that that patient would develop tuberculosis.

"Q. How, in this particular family, Doctor, the record shows that one brother, Clemmie Sparrow, died in 1932, with tuberculosis, and that another brother Carlton Sparrow died September 1936 with tuberculosis, and then you find that boy Napoleon in the condition in which you find him out there in November; wouldn't you say, Doctor, that a boy coming from a family where there has been previous deaths with tuberculosis is more apt to sustain tuberculosis just from ordinary conditions than the average person would irrespective of his work? A. Well, if he wasn't properly taken care of I would, yes, sir."

It would serve no useful purpose to quote further from the statement of facts for the reason that Dr. Lewis' testimony makes for appellees their strongest case.

The facts of this case bring it directly within the doctrine of the Burnett Case, Texas Employers Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200. The point in that case was thus stated by Judge German, writing the opinion for the Commission of Appeals [page 202]: "It is only contended that the injury may have to some extent lowered the resistance of the employee, and in that way probably contributed to some extent to his death." In the case at bar it is not contended that the exposure suffered by Napoleon Sparrow, as an employee of Hay's Sandwich Shop, gave him galloping consumption, but that, in the language of Dr. Lewis, he "had respiratory infection, pneumonia, or some other thing, that that is of course more liable to be brought on after exposure and changing from one temperature to another; we know that predisposes toward respiratory infection, and such respiratory infection predisposes toward tuberculosis, it is reasonable to think that that could have happened." The facts of the Jackson Case, Texas Employers' Ins. Ass'n v. Jackson, Tex.Com. App., 265 S.W. 1027, cited by Judge German in support of his opinion in the Burnett Case, seem to us to make it controlling on the facts of the case at bar.

It follows that the judgment of the lower court must be reversed and judgment here rendered in favor of appellant, and it is accordingly so ordered.

Reversed and rendered.