MOONEY v. COPPER RANGE RAILROAD COMPANY.

1. WORKMEN'S COMPENSATION—DEATH OF INJURED EMPLOYEE AFTER RECEIVING SOME COMPENSATION—DEPENDENCY HEARING—TRANSCRIPT OF TESTIMONY AT FORMER HEARING.

Upon the death of an injured employee to whom some compensation has been paid the proceeding abates as to him but is still pending to determine the rights of dependents, hence at hearing upon dependent widow's petition for substitution as party plaintiff transcript of testimony taken at hearing on employee's petition for compensation was properly admitted to establish a compensable injury.

2. SAME—AGGRAVATION OF CANCER.

Finding of department of labor and industry that accidental injury, sustained when locomotive engineer descended from cab, aggravated pre-existing cancer of the prostate gland and ultimately caused death *held*, sustained by testimony.

Appeal from Department of Labor and Industry. Submitted April 15, 1947. (Docket No. 14, Calendar No. 43,455.) Decided May 16, 1947.

Mrs. Augustine Mooney, widow of James A. Mooney, presented her claim against Copper Range Railroad Company for compensation for death of her husband. Award to plaintiff. Defendant appeals. Affirmed.

*Joseph M. Donnelly* and *S. W. Patek,* for plaintiff.

*H. C. Schulte,* for defendant.

SHARPE, J. On June 30, 1944, James A. Mooney suffered an accidental injury which arose out of and in the course of his employment with defendant railroad company. Mr. Mooney had been employed for about 40 years as a locomotive engineer. The injury occurred while he was descending from a locomotive cab to the ground. In the act of descending, he took hold of what is called the "grab iron" and slipped to the ground. After reaching the ground he felt a sharp pain in the region of his right groin. He continued working until July 25, 1944. During this period of time, he had pains in his groin and began to have pains in the middle of his back and to the left side of the spine. Mr. Mooney returned to work for a few days in the early part of August, but was obliged to quit work because of his disability. He reported the accident within two or three days after it occurred. He went to the hospital on October 6th and remained there until October 26th when he returned to his home. He returned to the hospital on December 16th for a few hours where he was examined by

two physicians employed by defendant company and two physicians of his own choice. He died on January 19, 1945. An autopsy was performed and disclosed ''advanced, poorly differentiated, adenocarcinoma of the prostate with metastases in lungs and skeleton.'' Mr. Mooney was paid compensation from July 25, 1944, to October 7, 1944.

On or about November 24, 1944, Mr. Mooney filed a petition for further compensation claiming total disability as a result of the accident. On January 2, 1945, an amended petition was filed alleging that the trauma of June 30, 1944, had aggravated and stimulated a chronic osteoarthritis of the spine. A hearing was held before a deputy commissioner on January 5, 1945, and on the same date an award was entered granting compensation for the period from July 25, 1944, to October 10, 1944, but denying compensation from that date forward, finding: ''that his disability from and after October 10, 1944 is in no way connected with or caused by his injury of June 30, 1944.''

On January 16, 1945, an appeal and petition for review and an application to take additional testimony were filed by Mooney. On February 19, 1945, notice of death and petition for substitution of the widow, Mrs. Augustine Mooney, as party plaintiff was filed with the department; and on March 26, 1945, she filed an application for hearing and adjustment of claim. On April 9, 1945, the department of labor and industry entered an order substituting the widow as party plaintiff and directed that ''the cause be remanded to a deputy commissioner to take testimony pertaining to the death of James A. Mooney and its relationship, if any, to his accident.''

The cause came on for hearing on August 24, 1945, in accordance with the order of the department before a deputy commissioner who made an award on

October 4, 1945, granting Mrs. Mooney compensation at the rate of $19 per week from January 19, 1945, until the full amount due under the act is paid. Defendant thereupon appealed to the department and on April 10, 1946, the department entered an order affirming the award.

Leave to appeal having been granted, defendant appeals and urges that it was error on the part of the deputy commissioner to admit in evidence at the second hearing, in which the widow was the plaintiff, a transcript of the testimony which had been taken at the first hearing in which James A. Mooney was the plaintiff; and that there is no competent evidence to support the finding of fact that the accident accelerated the growth of a pre-existing carcinoma, and was, consequently, a factor which contributed to decedent's death.

Defendant relies upon the case of *Stone* v. *Smith,* 275 Mich. 344, and the case of *Holtz* v. *Keith Detroit Corp.,* 276 Mich. 72, in support of its theory that it was error to admit the transcript of testimony taken at the first hearing as the death of the employee "amounted to an abatement of that proceeding."

In *Stone* v. *Smith, supra,* plaintiff employee had been awarded compensation by a deputy commissioner and an appeal was taken to the department. The injured employee died pending the appeal. His widow gave notice of death and petitioned the department to confirm the award of the deputy. Subsequently and on June 26, 1935, the department entered an order which provided "that notice and application for adjustment of claim filed in behalf of the dependents should be granted, the cause forthwith referred to a deputy commissioner to take testimony pertaining to the death of plaintiff and determining any dependents whom there might

be, to take such additional proof as might be submitted by either of the parties and make such necessary amendment of the title of the cause by addition of any dependents whom there might be as parties plaintiff, and make a supplemental award in the cause determining only the question of dependency and the names of any dependents and the amount of compensation they might be entitled to but not reviewing, altering or amending the award heretofore made in this cause in any particular."

Upon appeal, we said:

"In affirming the department's order of July 11, 1935, we are construing that order (as did the department) to mean no more than that the death of George E. Stone abated the proceedings as to him. This order merely made the abatement a matter of record. But for the purpose of determining the rights of George E. Stone's dependents to compensation the proceeding is still pending. It was entirely within the administrative powers of the department to remand the proceedings to a deputy commissioner to take testimony as to the death of George E. Stone and the rights of his dependents, if any. Such was the purpose of the department's order of June 26, 1935. After the supplemental hearing before the deputy commissioner is concluded either party should have the right of review of any question decided at either hearing before the deputy commissioner."

In the *Holtz Case,* the injured employee was awarded compensation. An application for review was filed by defendant company and while appeal was pending the employee died. Thereafter, defendant presented a petition to vacate the award because of the death of the employee. The department denied defendant's petition and ordered the case referred to a deputy commissioner to take testi-

mony as to whom the dependents were and to take further and additional testimony in addition to that theretofore taken.   Upon appeal we said:

"On Holtz' death prior to the payment of any compensation, there was an abatement of the entire proceeding and of all liability on the part of defendants to pay compensation inasmuch as an appeal had been taken and no final order made on such appeal.   *   *   *   The proceeding is still pending for the purpose of determining the rights of his dependents to compensation.   It was proper for the department to remand the proceedings to a deputy commissioner to take testimony as to Holtz' death and the rights of his dependents, if any; that at the supplemental hearing before the deputy commissioner, additional testimony may be taken by either party, each of whom shall have the right of review of any question decided at either or both hearings before the deputy commissioner.   This is in accordance with our opinion on a very similar state of facts in *Stone* v. *Smith*, 275 Mich. 344.   The first order stands as construed in this opinion.   The second order is held for naught."

In the case at bar the claim for compensation was abated only so far as the injured employee was concerned.   The proceeding was still pending to determine the rights of the dependent.   The purpose in each case was to determine whether the injured employee had suffered a compensable injury and, if so, to grant an award to the injured employee or his dependents.   The evidence necessary to establish a compensable injury would of necessity be the same in each case.   The term "abatement" as used in the *Stone* and *Holtz Cases* does not mean that the dependent must begin a new proceeding.   Such dependent may continue the original claim for compensation by the substitution of a new party claimant and continue the proceedings for the purpose

of determining the rights of such dependent. The admission of the testimony, taken at the first hearing when Mr. Mooney was living, at the hearing upon the claim of the widow at the second hearing was not error.

It is also urged that there was no competent testimony to justify the holding that Mr. Mooney's death was due to cancer, the growth of which was accelerated by the injury of June 30, 1944.

In the opinion of the department of labor and industry we find the following:

"Doctors Janis and Sloan, who appeared as witnesses for the plaintiff, were of the opinion that the accident could have aggravated or lighted up a dormant cancerous condition. On the other hand, Dr. Alfred LaBine, defendant's witness, was of the opinion that the injury could have no effect whatsoever upon the growth of the cancer. We also have the testimony of two well-qualified pathologists and their views are in direct conflict. Dr. Victor LeVine, pathologist, was of the opinion that the accident could have been a factor in the growth of the carcinoma. Dr. Carl Weller, a professor of pathology at the University of Michigan Hospital, whose testimony was taken by deposition, was of the opinion that the accident had no connection whatsoever with the growth of the cancer. Dr. Weller stated that the muscle pain, frequently referred to as a 'Charley horse,' is a symptom almost always experienced by one who has carcinoma of the prostate. It seems that Dr. Weller adheres to a rather strong belief that trauma is not a factor in the development of cancer.

"Here we have a man who, except for a hernia repair in 1934 and some slight ulcer difficulty in 1937 and again in 1943, worked steadily for many years and was in apparent good health. He had no symptoms indicating he had any disease. He had never complained of pain in his right leg or in his back.

Then, on a particular day this man 64 years of age was involved in an accident. It was not such a minor accident as defendant would have us believe. It is quite obvious that he did injure himself when he had the accident. We can not overlook the fact that almost immediately after the accident a pain developed in his right thigh. That was the 'Charley-horse' type of pain which is a characteristic symptom of carcinoma of the prostate. Undoubtedly the carcinoma was present in the prostate and in all probability had metastasized to the skeleton before the accident. It is very likely that it was dormant because he had no symptoms. The symptoms commenced shortly after the accident and became worse and at no time was he symptom-free following the accident. To exclude the accident as a causative factor we must disregard those undisputed facts and in effect conclude that the accident and the activity of the disease are merely coincidental. We think it is very significant that the thigh pain, similar to that caused by a sprained muscle and referred to as a 'Charley horse' developed shortly after the accident. He had no such pain before. It seems reasonable to conclude that there is a cause and effect relationship under such circumstances. When there is such a divergence of competent medical opinion, we, as laymen, must necessarily look to the facts for a way out of a seeming dilemma. In our opinion, the chain of circumstances, including apparent good health of the deceased, the accident, the onset of the symptoms and the progressive nature of the symptoms, the disability and ultimate death, are so closely connected and follow in such a definite pattern that we must conclude the accident did accelerate the growth of the pre-existing carcinoma and was therefore a factor which contributed to deceased's death.''

We have affirmed awards of compensation when the department found as a fact that trauma did accelerate a pre-existing cancerous condition. See

*King* v. *Munising Paper Co.,* 224 Mich. 691; *Melancon* v. *Chrysler Corp.,* 284 Mich. 360.

Dr. Paul Sloan, a witness produced by plaintiff, testified, in part, as follows:

"*Q.* At that time did he tell you about his injury?

"*A.* He gave me a history of its occurrence.

"*Q.* What was that?

"*A.* That he had hold of the grab iron, I think it is called, with his right hand and his foot slipped and he swung around and grabbed the rail with his left hand and twisted himself. Twisted his arm and back.

"*Q.* Would the incident described constitute a strain severe enough to aggravate a latent, dormant inactive metastasis of the spine?

"*A.* That is my opinion, yes.          *          *          *

"*Q.* In your opinion what would be the cause of death?

"*A.* Metastatic adenocarcinoma.

"*Q.* State whether or not that could have resulted from the aggravation of a latent metastasis that existed prior to and at the time of the injury?

"*A.* Could have been, yes.

"*Q.* Do you know any other types of cases of cancer that are affected by trauma?

"*A.* Yes, in reference to your question a few minutes ago you asked one of the other doctors the reason for the doctor's stand, since there are two antagonistic stands, and my reason for feeling that there is definitely a causal relationship between trauma and the flaring up of the carcinoma, I frankly don't believe that an actual trauma causes it primarily, but the flaring up of the metastasis is borne out with and is emphasized to me by carcinoma of the breast and other areas of the body. When a specimen is taken from the breast and sent in for pathological diagnosis, if the report comes back cancer we know that the entire breast has to be re-

moved immediately due to the process of flaring up because of having cut into it merely for the purpose of biopsy. All of the doctors agree on that. The same is true of carcinoma of the prostate. The symptoms of the metastasis are flared up after surgery is done.''

We recognize that medical authorities are not in agreement upon the question as to whether trauma can aggravate or accelerate a cancer. The department holds to the view that trauma may aggravate or accelerate a cancer. There is competent evidence to support the view and finding of fact by the department on this question.

The award of the department is affirmed, with costs to plaintiff.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.