**CHARLESTON SHIPYARDS, Inc., a corporation, and American Casualty Company of Reading, Pennsylvania, a corporation, Plaintiffs,**

**v.**

**Richard P. LAWSON, Deputy Commissioner, Department of Labor, Bureau of Employees' Compensation, Sixth Compensation District, and Hamp Huery, Defendants.**

Civ. A. No. 4052.

United States District Court
E. D. South Carolina,
Charleston Division.

June 10, 1955.

Robert McC. Figg, Jr., Charleston, S. C., for plaintiffs.

Meyer, Goldberg & Hollings, Charleston, S. C., N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., Theodore D. Stoney, Asst. U. S. Atty., Arthur G. Howe, Asst. U. S. Atty., Charleston, S. C., for defendants.

WILLIAMS, District Judge.

Plaintiffs herein filed on December 22, 1953, a petition and complaint to enjoin order under Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq. On this petition and complaint I granted an order dated December 30, 1953, suspending the payments required to be made under the compensation award herein and stayed the enforcement of the order and award during the pendency of this action.

The defendant Hamp Huery filed an answer on February 4, 1954 and the defendant Richard P. Lawson, Deputy Commissioner, Department of Labor, Bureau of Employees' Compensation Sixth Compensation District, filed an answer on October 8, 1954.

On October 19, 1954, the defendant Richard P. Lawson filed a motion for summary judgment. The order and award of Richard P. Lawson, Deputy Commissioner, fully and clearly states the facts. The award is as follows:

"Such investigation in respect to the above entitled claim having been made as is considered necessary and a hearing having been duly held in conformity with law, the Deputy Commissioner makes the following:

"That on the 18th day of January 1952, the claimant herein, Hamp Huery, of R.F.D. No. 1, Box 90, James Island, South Carolina, was in the employ of the employer herein, Charleston Shipyards Incorporated of P. O. Box 845, Charleston, South Carolina, at Charleston in the State of South Carolina, in the Sixth Compensation District established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act and that the liability of the employer for compensation under said Act was insured by American Casualty Company; that on said day the claimant herein, while performing service for the employer as a laborer and engaged in repairing the U. S. S. Parker which was afloat in the Cooper River at the yard of the employer, sustained personal injury when as he was carrying two buckets of grease in the engine

room of said vessel he stumbled over some steel and stepped heavily upon a piece of steel which penetrated his shoe and injured the plantar surface of his right foot; that at the time of the injury of January 18, 1952, there was present on the plantar surface of the claimant's right foot a wart-like lesion or benign nevus which had been present since he was a small boy or possibly from his birth about 46 years before the injury; that this wart-like lesion or benign nevus had never been painful or troublesome to the claimant or interfered with or reduced his ability to work before the injury of January 18, 1952; that the trauma to his right foot on said date was directly to this wart-like lesion, tore it partially loose from the surrounding tissue and left a fissure around its edge from which there exuded blood, and later serous fluid; that when the injury occurred the claimant dropped the buckets of grease which he was carrying, removed his shoe and sock and found blood coming from the wound; that he then told his supervisor, Mr. Floyd, about the injury and offered to show him the injury on his foot; that the injury occurred on Friday afternoon and that there was no work on Saturday or Sunday; that on Monday, January 21, 1952, the claimant was sent by Mr. Floyd to the personnel office where the claimant told Mr. Drury the same story of the injury and that Mr. Drury arranged for the claimant to report to Doctor Paulling; that Doctor Paulling upon his examination found the wart-like lesion which had been partially torn loose from the surrounding tissue by the injury as described by the claimant; that although the claimant's supervisor, Mr. Floyd, Mr. Bishop, and the personnel man, Mr. Drury, were all told the same story of the injury, no investigation was made at that time by the employer or any of its supervisory employees; that written notice of injury was not given to the employer within thirty days from the date of such injury or to the deputy commissioner, but that the employer had knowledge of the injury and has not been prejudiced by the failure to give such written notice; that the employer furnished the claimant with medical treatment, etc., in accordance with Section 7(a) of the said Act; that the average annual earnings of the claimant herein at the time of his injury amounted to the sum of $1,560.00; that on January 28, 1952, the attending physician found that the claimant's right foot was definitely more painful, that the amount of exudation had increased and that the wound had a definite odor like that of necrotic tissue which odor had not previously been present; that the lesion was excised and, upon laboratory examination, it was found to be a malignant melanoma; that on February 4, 1952, an operation known medically as hemipelvectomy was performed upon the claimant by which his right leg and the right half of his pelvis were amputated; that this hemipelvectomy was a necessary surgical procedure required by the presence of the malignant melanoma on the right foot; that the injury of January 18, 1952, played a definite part in the development of the malignant melanoma in that the preexisting lesion or benign nevus was activated and accellerated by the injury of January 18, 1952 and that such effects of the injury necessitated and resulted in the amputation of the claimant's right leg and the right half of his pelvis; that the surgical wound caused by the hemipelvectomy was thoroughly healed and no further medical treatment was needed on March 16, 1952; that the claimant continued to work through January 27, 1952; that as a result of the injury of January 18, 1952, the claimant herein had no ca-

pacity to earn wages and was wholly disabled from January 28, 1952, to October 4, 1953, inclusive, on which latter date he was still wholly disabled, and he is entitled to 88 weeks compensation at $20.00 per week for such total disability and he is entitled to continue to receive compensation at $20.00 per week during the continuance of such total disability; that the compensation for total disability to October 4, 1953, inclusive, amounts to $1,760.00; that the claimant has not heretofore been paid any compensation for the injury of January 18, 1952, by the employer or the insurance carrier; that the services of Meyer, Goldberg and Hollings, attorneys for the claimant, were necessary services and that the reasonable value of such services is $400.00.

"Upon the foregoing facts the deputy commissioner makes the following:

"The employer, Charleston Shipyards Incorporated and the insurance carrier American Casualty Company shall pay to the claimant, Hamp Huery of R. F. D. No. 1, Box 90, James Island, South Carolina, compensation as follows: 88 weeks at the rate of $20.00 per week from January 28, 1952, to October 4, 1953, inclusive, which is $1760.00 for total disability, which amount the employer and the insurance carrier are directed to pay forthwith and to continue payments of $20.00 per week thereafter during the continuance of such total disability.

"The employer and the insurance carrier are directed to make such payment of $1,760.00 in the following manner: They shall pay directly to Meyer, Goldberg and Hollings of 115 Church Street, Charleston, South Carolina, the sum of $400.00 and shall pay the balance of $1,360.-00 directly to Hamp Huery either by hand or by mailing it to him at R. F. D. No. 1, Box 90, James Island, South Carolina."

In the case of O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 472, 95 L.Ed. 483, the Court said:

"Both sides conceded that the scope of judicial review of such findings of fact is governed by the Administrative Procedure Act. Act of June 11, 1946, 60 Stat. 237, 5 U.S.C. § 1001 et seq., 5 U.S.C.A. § 1001 et seq. The standard, therefore, is that discussed in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456 [95 L.Ed. 456]. It is sufficiently described by saying that the findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole. The District Court recognized this standard.

\* \* \* \* \*

"We are satisfied that the record supports the Deputy Commissioner's finding. The pertinent evidence was presented by the written statements of four persons and the testimony of one witness. It is, on the whole, consistent and credible. From it the Deputy Commissioner could rationally infer that Valak acted reasonably in attempting the rescue, and that his death may fairly be attributable to the risks of the employment. We do not mean that the evidence compelled this inference; we do not suggest that had the Deputy Commissioner decided against the claimant, a court would have been justified in disturbing his conclusion. We hold only that on this record the decision of the District Court that the award should not be set aside should be sustained."

▮ The Commissioner's award should be accepted unless it is unsupported by substantial evidence on the record considered as a whole. I have reviewed the entire record in this case and am convinced that the Commissioner's award should be adopted.

In all cancer cases, the medical testimony bearing upon the causal connection between the injury and the cancerous condition is unsatisfactory because the doctors who testify admit that they are practically helpless in making positive statements with reference to cancer. In the case under consideration none of the doctors would testify that it was more than a possibility that the injury suffered by Hamp Huery caused the cancerous condition which necessitated the amputation of his leg. The doctors testified that it was impossible for anyone to make a definite statement in reference to cases of this kind. The Deputy Commissioner's findings, however, are supported by substantial circumstantial evidence and did not depend altogether upon the medical testimony.

The Supreme Court of South Carolina, in the case of Jeffers v. Manetta Mills, 190 S.C. 435, 3 S.E.2d 489, 490, quite aptly stated the rule which prevails in cancer cases:

"The burden rests upon the claimants to show by competent testimony, not only the fact of injury, but that it occurred in connection with the employment of the deceased; and to furnish evidence from which the inference can logically be drawn that the injury arose out of and in the course of the employment. The award, of course, must be based upon something more than surmise or conjecture. Rudd v. Fairforest Finishing Co., 189 S.C. 188, 200 S.E. 727.

"It is also true that the proof of such facts may be established by circumstantial as well as by direct evidence. Liquid Carbonic Co. v. Industrial Commission, 352 Ill. 405, 415, 186 N.E. 140, 87 A.L.R. 770; Ohio Building [Safety] Vault Co. v. Industrial Board, 277 Ill. 96, 115 N.E. 149; Demastes v. State Compensation Commissioner, 112 W.Va. 498, 165 S.E. 667; 71 C.J., page 1085. And where the circumstances surrounding the injury sustained by the deceased are such as to lead an unprejudiced mind reasonably to infer that it was caused by accident, the evidence need not negative all other possible causes of death. Schneider, Workmen's Compensation Law, vol. 1, page 1013.

\* \* \* \* \*

"The medical testimony bearing upon the causal connection of the alleged burn with the cancerous condition is somewhat unsatisfactory, largely because of the fact that all of the doctors testified that they are practically helpless in the presence of cancer, and have no knowledge as to what might bring about the condition. They said that the cause of cancer is a matter of surmise and conjecture.

\* \* \* \* \*

"The general rule, clearly to be adduced from the decisions in this type of case, is that if facts show a causal connection between the injury and the development of cancer, then the two cannot be separated, and the victim of the cancer, or his dependents, is entitled to compensation. Winchester Milling Corporation v. Sencindiver, 148 Va. 388, 138 S.E. 479, 483. As was said in the above case: 'To this we may add that the courts have in general found no difficulty in cases similar to the one we are considering here, in applying the ordinary rules of evidence, and in drawing the ordinary conclusions of cause and effect from established facts, and we find none. This, we doubt not, courts will continue to do with a full sense of justification and without apology until the cause of cancer is definitely and scientifically established.' "

It is quite clear to me after a review of the entire record that the findings of the Commissioner on the whole are *consistent* and *credible*. I think from the testimony of the doctors and other evidence which was presented, the Deputy Commissioner could *rationally infer*

that the injury to Hamp Huery's foot while he was engaged in the work of his employer necessitated the amputation of his leg. It is, therefore,

Ordered that the order of December 30, 1953, staying the enforcement of the award during the pendency of this action is hereby cancelled and that the award is hereby approved.