Tommie B. JACOBY, Appellant,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.

No. 13386.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 19, 1958.

Rehearing Denied Dec. 17, 1958.

Putman & Putman, Richard G. Strong, San Antonio, for appellant.

Eskridge, Groce & Hebdon, San Antonio, for appellee.

BARROW, Justice.

This is a Workmen's Compensation death case. Tommie B. Jacoby, appellant and plaintiff below, is the surviving widow and sole beneficiary under the Texas Workmen's Compensation Statutes, of Levy Arthur Jacoby. Texas Employers' Insurance Association, appellee and defendant below, was the insurance carrier for Joske Brothers Company, the employer of Levy Arthur Jacoby on or about March 26, 1955, the time of the injury in question.

Appellant sued for full death benefits (three hundred and sixty weeks at $25 per week, no compensation having been paid Levy Jacoby during his life), alleging that a chest injury sustained on or about March 26, 1955, resulted in the death of Levy Jacoby on July 23, 1956, either by being the direct cause of cancer of the bone, or by inciting, accelerating and aggravating a

pre-existing cancer. The appellee defended on the theory that the death was caused solely by a cancerous condition unrelated to the injury.

Trial was to a jury in the 131st Judicial District Court of Bexar County, Texas. The jury found that the injury in question was a producing cause of death, and that the death was not solely caused by a cancerous condition independent and disassociated from the injury. Appellant moved for judgment on the verdict, and appellee moved for judgment non obstante veredicto. The trial court entered judgment non obstante veredicto that appellant take nothing. From this judgment appeal was duly perfected.

The deceased, Levy Jacoby, who at the time, to all outward appearance, was a robust, vigorous man, apparently free from disease or infirmity, on or about March 26, 1955, while in the course of his employment accidently fell against a conveyor, fracturing a rib on the left side of his chest. He received medical treatment from Dr. Bloom, who examined the deceased by feeling the site of the fracture and decided that the injury consisted mainly of a fractured rib. The doctor then strapped the left side of his chest with adhesive tape to prevent any motion of those ribs, so they would heal normally. Thereafter, Jacoby continued to suffer pain in this area and was hospitalized from September 13, 1955, to September 23, 1955, during which time the rib was removed. At the site of the fracture a cancerous growth, described as being the size of a hen egg, was found to have developed in and around the rib in question. After the operation he continued to work at his employment, until December 24, 1955. His condition continued to deteriorate until he finally became bedfast and finally died on July 23, 1956. On September 24, 1955, Dr. Norman H. Jacob, Jr., a pathologist, made an examination of the cancerous mass and rib removed from deceased in the operation. On October 11 and 13, 1955, Dr. Francis Edward O'Neill made numerous X-rays of the deceased, and thereafter gave him X-ray treatments. The X-rays revealed that secondary cancerous areas or metastases had developed not only in the rib area but in two different places in deceased's backbone, the twelfth thoracic vertebra and the third lumbar vertebra. Some time later Dr. O'Neill X-rayed the deceased again and discovered that the right kidney was cancerous.

The law is settled in Texas that in order for an injury to be compensable under the Workmen's Compensation laws of this State it must be a producing cause. Article 8306, § 8, Vernon's Ann.Civ.Stats. Producing cause has been defined as "cause which, in a natural and continuous sequence, produces the death (or disability) in issue, and without which the death (or disability) would not have occurred." Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200, 201; Jones v. Traders & General Ins. Co., 140 Tex. 599, 169 S.W.2d 160.

In this case four medical witnesses testified: Dr. Bernard H. Bloom, the family physician, who first treated deceased; Dr. James W. Nixon, Jr., who performed the operation on deceased; Dr. Norman H. Jacob, Jr., pathologist who examined the cancerous tumor taken in the operation; and Dr. Francis Edward O'Neill, who X-rayed and interpreted numerous X-rays of deceased at different times prior to his death. These medical witnesses, from the record in this case, appear to be well informed and experienced in the diagnosis and treatment of cancer. These doctors are all in agreement that the primary location of the cancer in deceased's body was in his right kidney; that prior to the accident in question this cancerous condition had metastasized or scattered to various areas of the body and had already formed secondary cancerous areas in two places in deceased's backbone, the third lumbar vertebra and the twelfth thoracic vertebra, as well as perhaps in the rib in question, and that undoubtedly these metastases or secondary cancerous areas came from the primary source. They agree that while it is possi-

ble, it is improbable for one metastasis to be the source of another, and that the cancer in the rib area was not the source of the cancer in the spine. These doctors also agree that the deceased died from cancer, and that the injury did not incite, aggravate or accelerate the pre-existing disease; that he was certain to die of cancer regardless of the injury. The strongest testimony we have found in favor of appellant is the testimony of appellant's witness, Dr. Bernard H. Bloom, who testified that the injury could and probably did weaken the physical resistance of the deceased to the ravages of the disease and thereby hasten his death to some degree. There was no positive proof that such weakened resistance, if any, contributed materially to the death of deceased. The extent of such resistance and its relation, if any, to the death of deceased, was entirely conjectural. While Dr. Bloom testified that an injury might rupture a blood vessel and transport some of the cancerous tissue into the blood and cause another metastasis in some other part of the body, yet the rule is otherwise and the probabilities are against it. He testified that at the time of the injury cancer had already spread all over deceased's body and at that time his spine was already affected, and that probably other metastases were beginning to show. He further testified that the injury probably had nothing to do with the spread of cancer, but there is a possibility that it might. He further testified:

"Q. The main factor, in your opinion, as to his life being shortened is the stress and strain that resulted from having the injury? A. Yes, sir.

"Q. Now, Mr. Jacoby, of course, was going to die of cancer? A. Oh, sure."

The evidence further shows that prior to deceased's death the flesh rotted away from the metastases in his back.

■ We think this case comes squarely within the rule stated in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, and followed in Austin v. Neiman, Tex.Com.App., 14 S.W. 2d 794, and in Houston Fire & Casualty Ins. Co. v. Biber, by this Court, 146 S.W. 2d 442, 446, error dismissed, correct judgment; said rule being as follows:

"If the probative force of evidence be so weak that it raised only a surmise or suspicion of the existence of a fact sought to be established, that evidence in legal contemplation is 'no evidence' and will not support a finding which comprehends the existence of the disputed fact."

In the light of the foregoing rule, we think any testimony of Dr. Bloom tending to show a causal connection between the injury and the death of deceased is so speculative and indefinite that it fails to discharge appellant's burden to show such connection.

Dr. Bloom, appellant's witness and family physician, testified: "I can't say that it (referring to the injury) didn't contribute to his dying any sooner because it brought some stress and strain on his system. I feel, in my opinion, that he died somewhat sooner because of the injury. I can't give you the exact time, because we knew he was going to die, but I think that blow directly shortened his life span." As to how much the injury hastened the death, the doctor testified that nobody knows whether the injury shortened his life by one minute, one day or "maybe" six months. We do not consider the evidence as sufficient to raise the issue of the injury to the deceased being a contributory cause of his death.

In the Burnett case, supra, the Supreme Court had before it a case where the employee, Burnett, on August 26, 1930, received an injury by a stroke on his forehead. He died on September 11, 1931, of typhoid fever. It was contended in that case, just as in the instant case, that the injury did to some extent reduce the power of resistance of the deceased and in that manner contributed to his death. The trial court awarded judgment to the claimant. The Court of Civil Appeals reversed and

remanded the case for errors in the charge. The Supreme Court in reversing and rendering the case said:

"With a disease like typhoid fever, it is a matter of pure speculation to say that the victim would not have died but for the lowered resistance, the extent of which was left to the conjecture. By whatever term we may attempt to define the causal connection between the injury and the death, in the absence of a disease or infection which is the natural result of the injury, there must be shown a direct causal connection between the injury and the death, with no efficient intervening agency, with sufficient certainty that it may be reasonably concluded that death would have resulted from the injury, notwithstanding the subsequently intervening disease."

The Burnett case was followed in Aetna Casualty & Surety Co. v. Sparrow, Tex. Civ.App., 122 S.W.2d 286. In that case a young (Negro) boy had tuberculosis, which according to the record was probably hereditary. He was forced to do his work in a great amount of rain and wet weather which brought on respiratory troubles, and he subsequently died from tuberculosis. The Court reversed the trial court and held that the insurance carrier was entitled to an instructed verdict, citing and relying on the Burnett case.

In Jones v. Traders & General Ins. Co., 140 Tex. 599, 169 S.W.2d 160, 162, the Supreme Court had before it a case in which the injured employee, Tom P. Jones, stepped on a nail which penetrated the ball of his foot, on May 4, 1938. The wound became infected, and he suffered intense pain, until on November 11, 1938, he committed suicide by drinking poison. The trial court on a jury verdict rendered judgment for the claimant. In reversing and rendering this judgment the Court said:

"Causal connection must be established between the injury and the death. The injury must be the producing cause

of the death, and producing cause has been defined as 'that cause which, in a natural and continuous sequence, produces the death * * * in issue, and without which the death * * * would not have occurred.' Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 410, 105 S.W.2d 200, 201; Texas Indemnity Ins. Co. v. Staggs, 134 Tex. 318, 134 S.W.2d 1026. In the Burnett case it was held that the injury was not the producing cause of the death, because the employee died as the result of typhoid fever which was in no way produced or caused by the injury, there being thus an independent intervening agency to which the death was directly due."

In Lumbermen's Mut. Casualty Co. v. Vaughn, Tex.Civ.App., 174 S.W.2d 1001, 1005, Virgil Vaughn, a boy fifteen years old, was injured while working on his job, on July 30, 1941. He was working above the ceiling of a building under construction and fell through the ceiling to the floor below, a distance of twelve feet. He landed on the floor either in a sitting position or fell to a sitting position immediately after landing on the floor. A short time thereafter, perhaps two or three weeks, he died as a result of poliomyelitis. The record does not give the exact date of his death. It was contended that the fall weakened his spine and made him susceptible to polio. Upon a jury verdict, the trial court rendered judgment for the claimant. The Court of Civil Appeals, in reversing and rendering the judgment said:

"If plaintiff's theory is that Virgil's resistance to the infection was lowered by the accident—that he would have been able to throw off the infection but for the injuries received in the accident, whatever those injuries may have been—then it must fail for two reasons. First, when death is due directly to an intervening agency, having no connection with or relation to the original injury, although the injury may have to some extent reduced the power

of resistance of the deceased, and in that manner contributed in some degree to his death, there is no liability for compensation. Texas Emp. Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200; * * *."

■ We believe that the Courts of this State are committed to the proposition that an injury which does no more than weaken the physical resistance to disease is insufficient to constitute a producing cause, and that although the injury may have retarded or lessened the physical resistance of the injured employee to disease, pre-existing or thereafter contracted, unless the pre-existing disease itself is incited, aggravated or accelerated by the injury, or unless the injury is the producing cause of the after acquired disease, the injury cannot be a producing cause within the Workmen's Compensation laws.

The appellant relies strongly on the case of Trinity Universal Ins. Co. v. Walker, Tex.Civ.App., 203 S.W.2d 308, 312. This case is readily distinguishable from the instant case. In the Walker case the deceased suffered a heat stroke while in the course of his employment. He later died of a brain tumor, his suffering from which dated back to the injury. In passing on causation, the Court said:

"The cause of tumor of the brain is unknown. It may lie dormant in the brain from birth until something causes its growth, which when once started, appears to be very rapid. It seems to be an accepted fact that heat stroke or prostration causes disturbances within the brain and since such disturbances can do no good to the brain, it seems very reasonable that harm results and not at all unlikely that the tumor was thus aggravated into rapid growth. At any rate there was ample evidence from which the jury could so find and we are bound thereby."

■ It is apparent in the instant case that the injury was not the producing cause

of the malady from which the deceased died.

We pretermit a discussion of the authorities from other jurisdictions, cited by the parties, for the reason that we believe the law is settled in this State.

The judgment is affirmed.

W. O. MURRAY, Chief Justice.

I do not concur in the opinion of the majority and here give my reasons for my dissent:

In this case the findings of the jury were favorable to appellant, but such findings were set aside and judgment rendered by the court for appellee, notwithstanding the verdict of the jury.

Only two issues were submitted to the jury. In answer to the first issue the jury found that the injury which Levy Arthur Jacoby suffered on or about the 26th day of March, 1955, while in the course of his employment at Joske's, was a producing cause of his death, and, in answer to the second issue, the jury found that the death of Levy Arthur Jacoby was not solely caused by a cancerous condition, if any, independent of and disassociated from the injury sustained by him on or about the 26th day of March, 1955. If there was evidence to support these findings of the jury it was error for the trial court to disregard them and render judgment non obstante veredicto.

The testimony shows that prior to March 26, 1955, Levy Jacoby was a robust vigorous man who worked regularly. On that date he accidentally fell against a conveyor, injuring his chest and fracturing a rib. Thereafter his appearance and disposition changed radically and progressively from an apparently well and healthy person to an acutely ill person who was increasingly suffering from pain. He was hospitalized from September 13, 1955, to September 23, 1955, during which time the rib was removed. At the site of the fracture a large

cancerous growth was found to have developed which had eaten away the bone and encased the fractured portions. His health continued to deteriorate, causing him to cease working, to become bedfast, until July 23, 1956, when he died. The cancerous mass which formed around the broken rib was not the primary site of the cancer in his body, but was a secondary site of a pre-existing cancer.

Dr. Bloom, who first treated Jacoby, testified that at the time of the injury there was no outward evidence of a cancer, but the cancer must have existed at the time of the injury, otherwise the rib would have healed. He further testified that the effect of the injury was to cause the cancer to spread more rapidly, and went on to explain this to great extent. He stated that he felt the injury shortened Jacoby's life to some extent, by exciting the cancerous growth, resulting in an early death.

Dr. Nixon, who removed the rib, testified for the appellee that in his opinion the accidental injury in question neither aggravated nor accelerated the pre-existing cancer. As to trauma to a pre-existing tumor affecting the progress of the cancerous condition, generally speaking, he did not believe it has anything to do with it, but he was not sure. He stated there were two schools of thought on the question and that no one knows why cancer starts, why it grows and why it spreads.

Dr. O'Neill, the radiologist who had interpreted the X-ray film and who had treated Mr. Jacoby with X-ray therapy, testified for the appellee. He would not express an opinion as to whether the trauma received in the accidental injury hastened Mr. Jacoby's death or not. He would not say that it did not hasten his death. He admitted there were authorities who would say one way and others the other, but that no one really knows.

Dr. Jacob, the pathologist who diagnosed the cancer in the mass which was removed with Mr. Jacoby's rib, testified for appellee. He said he could not deny that the injury could have accelerated the cancerous condition and contributed to his death. He could not say whether the injury had shortened Mr. Jacoby's life. He believed it possible that the injury to the rib hastened his death.

Thus, none of appellee's three doctors would categorically deny that Dr. Bloom was right in his opinion that the injury did, by accelerating the pre-existing cancer, hasten Levy Jacoby's death.

All of this evidence was sufficient to raise the issues submitted to the jury, and, in my opinion, the trial court erred in setting aside the verdict and rendering judgment contrary to the findings of the jury.

The majority opinion is based largely upon Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200; Aetna Casualty & Surety Co. v. Sparrow, Tex.Civ. App., 122 S.W.2d 286, and Jones v. Traders & General Ins. Co., 140 Tex. 599, 169 S.W. 2d 160. I do not consider these cases in point. In the Burnett case the Court held that there could be no recovery where death was due directly to typhoid fever, and independent intervening disease or agency having no connection with or relation to an original injury, even though it might have to some extent reduced the power of resistance of the employee and in that manner contributed in some degree to his death. I have no quarrel with this decision. It is unquestionably a correct statement of the law in this State. In the case at bar we have no independent intervening disease such as typhoid fever.

In the Sparrow case the Court went no further than to hold that contracting a cold and pneumonia from exposure while on the job does not constitute the receiving of an accidental injury within the meaning of the Workmen's Compensation Act. Art. 8309, Vernon's Ann.Civ.Stats. This holding is plain, when you take what the Court said in the Sparrow case in connection with the holding in Texas Employers' Ins. Ass'n v. Jackson, Tex.Com.App., 265 S.W. 1027. The Court said [122 S.W.2d 288]: "The facts of the Jackson Case, * * * cited

by Judge German in support of his opinion in the Burnett Case, seem to us to make it controlling on the facts of the case at bar." In the Jackson case the Court said that successive wettings of an employee by rain, resulting in his contracting a cold and pneumonia, did not constitute the receiving of an "injury" or a "personal injury" within the meaning of the Workmen's Compensation Act. It is admitted in the case at bar that the deceased did receive an injury within the meaning of the Workmen's Compensation Act.

The Jones case goes no further than to hold that where a deceased committed willful suicide, such suicide was an independent agency, breaking the causal connection between an injury to the employee and the employee's death.

My view of the present case is supported by the following cases: Gulf, Colorado & Santa Fe Railway Co. v. Deen, Tex., 312 S.W.2d 933; Texas Employers' Ins. Ass'n v. Smith, Tex.Civ.App., Galveston 1951, 235 S.W.2d 234, writ refused; Trinity Universal Ins. Co. v. Walker, Tex. Civ.App., Austin, 203 S.W.2d 308; Travelers Ins. Co. v. Rowand, 5 Cir., 1952, 197 F. 2d 283; Dundee Woolen Mills v. Chism, 1949, 215 Ark. 126, 219 S.W.2d 628; Welch v. Essex County, 6 N.J.Super. 422, 68 A.2d 787, affirmed 6 N.J.Super. 184, 70 A.2d 779; Dixie Pine Products Co. v. Dependents of Bryant, 228 Miss. 595, 89 So.2d 589; Boyd v. Young, 193 Tenn. 272, 246 S.W.2d 10; Taylor v. Mansfield Hardwood Lumber Co., La.App., 65 So.2d 360; Mooney v. Copper Range R. Co., 318 Mich. 120, 27 N.W.2d 603; Charleston Shipyards v. Lawson, D. C.S.C., 141 F.Supp. 764.

Appellant is entitled to have the evidence construed in a light most favorable to the findings of the jury, and when this is done there can be no doubt about the sufficiency of the evidence. It is true that the doctors agreed that Levy Arthur Jacoby was going to die, and this is true of every human being, but there is ample evidence to show that Jacoby would not have died at the time

he did except for the injury which he received. Therefore, the injury was a contributing cause of his death. It did not have to be the sole cause, and even if cancer was the major cause of his death, if the injury was a contributing cause and brought about his death at an earlier time than it would otherwise have occurred, appellant can recover and the pre-existing cancer is no defense. Norwich Union Indemnity Co. v. Smith, Tex.Com.App., 12 S.W.2d 558, affirming Tex.Civ.App., 3 S.W. 2d 120, certified question answered 117 Tex. 103, 298 S.W. 403; Millers' Indemnity Underwriters v. Schrieber, Tex.Civ.App., 240 S.W. 963 (error refused); Texas Employers' Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752 (error dismissed); Traders & General Ins. Co. v. Watson, Tex.Civ. App., 131 S.W.2d 1103 (dismissed, judgment correct).

I respectfully dissent from the opinion of the majority.