Evelyn SCHULLE, Appellant,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.

No. 3–89–075–CV.

Court of Appeals of Texas, Austin.

April 11, 1990.

Rehearing Overruled May 9, 1990.

William W. McNeal, Lockhart, for appellant.

Preston H. Dial, Jr., Groce, Locke & Hebdon, San Antonio, for appellee.

Before SHANNON, C.J., and GAMMAGE and JONES, JJ.

SHANNON, Chief Justice.

The pivotal question in this appeal is whether the on-the-job injury suffered by Oscar Schulle was a producing cause of his death pursuant to the workers compensation law. Tex.Rev.Civ.Stat.Ann. art. 8306 (1967 & Supp.1990).

Schulle died of cancer on October 8, 1985. Appellant, Evelyn Schulle, his widow, filed suit asserting that her husband perished as a result of injuries received on the job. The district court of Caldwell County rendered a take-nothing judgment upon the insurance company's motion for directed verdict. This Court will affirm the judgment.

On July 23, 1985, Schulle was a foreman for Cox Oil Well Service. On that afternoon, Schulle slipped on a flat-bed truck and fell backward against a mud pump, striking his lower back. That night he complained of back pain to his wife. Schulle returned to work the next morning but the pain persisted. On August 8, 1985, Schulle received medical attention in Luling and was treated for a lumbar sprain and ordered to remain in bed. Despite conservative treatment, the back pain worsened.

Schulle was admitted to Brackenridge Hospital in Austin on August 27, 1985, where he was diagnosed as having cancer of the left lung. By that time, the cancer had also spread to several bony areas of the body including the lumbar spine, left shoulder, and left arm. When the cancer was diagnosed, it was considered incurable and when Schulle was discharged from the hospital on September 26, 1985, the oncologist, Lawrence Kevin Tokaz, believed it to be terminal.

The oncologist testified that Schulle suffered a compression to the L-2 vertebra caused from the on-the-job fall. In Tokaz's opinion, the L-2 vertebra was not a part of the spine to which the cancer had spread. The onset of the cancer was in the left lung rather than in the vertebra, shoulder, or arm. The cancer in the lung existed before the fall, and, in the oncologist's opinion, the cancer had spread to the bony parts of Schulle's body at a time before the fall. The fall did not incite, aggravate, or accelerate the primary cancer in the left lung or the secondary cancer in the bony parts.

Tokaz testified that Schulle would have died from cancer even had he not fallen. The fall, however, fractured Schulle's vertebra and caused him to become bedridden. Tokaz testified that a patient who is bedridden may not be treated as successfully as one who remains "up and around." An ambulatory patient not in constant pain is usually willing to accept aggressive cancer treatment such as surgery or chemotherapy. On the other hand, Tokaz testified that a patient who is bedridden and in constant pain tends to give up more easily and resign himself to the status quo.

Tokaz testified that because of the fractured vertebra and resulting constant pain, Schulle seemed to give up his will to live and rejected aggressive cancer treatment. Accordingly, Tokaz was of the view that had Schulle not fallen, he would have lived longer. He could not testify, however, whether the fall shortened Schulle's life "by a moment, or a day, or a week, or a month."

The insurance company defends the judgment, contending that the district court properly directed a verdict because the evidence shows conclusively that Schulle's on-the-job injury was not a producing cause of his death. In reviewing a judgment on directed verdict, the court accepts the evidence and the inferences therefrom in their aspect most favorable to the non-movant's case and rejects contrary evidence and inferences. *Triangle Motors v. Richmond*, 152 Tex. 354, 258 S.W.2d 60, 61 (1953).

Accepting the evidence and its inferences most favorable to appellant and rejecting the contrary evidence and inferences, the proof is that Schulle fell on-the-job and broke his L–2 vertebra. He sought medical assistance, but the pain progressively worsened and he was confined to bed. Soon Schulle was diagnosed as having incurable cancer of the left lung which had spread to the spine, left shoulder, and arm. The cancer existed in all areas of his body before the fall and the fall did not aggravate or cause the cancer to spread.

Schulle would have died of cancer absent the fall. Nevertheless, in the fall, Schulle's L–2 vertebra was fractured causing him constant pain. Such condition required him to be bedfast. Because he was bedridden and in constant pain, it was more difficult to treat him for cancer. As a result of Schulle's constant pain and invalidism, he seemed to lose the will to live and, consequently, he refused aggressive treatment for cancer. Had Schulle been treated aggressively for cancer, his life would have been prolonged for a period of time. No one knows, however, how much longer he would have lived.

An on-the-job injury that aggravates a preexisting condition or disease is, of course, compensable under the workers compensation law. *Texas Indemnity Ins. Co. v. Godsey*, 143 S.W.2d 639, 642 (Tex. Civ.App.1940, writ ref'd). The insurance company correctly points out, however, that there was no evidence that Schulle's back injury aggravated the preexistent cancer. In fact, all of the medical proof was that the fall and the resulting vertebra fracture *did not* aggravate either the primary or secondary cancer.

Appellant insists, however, that the judgment should be reversed and the cause remanded for jury trial because there was some evidence of "producing cause." The evidence relied upon by appellant is the medical testimony that Schulle's fall and resulting vertebra fracture caused him to die from cancer sooner than he otherwise would have. The basis for appellant's position is found in 2 State Bar of Texas, Texas Pattern Jury Charges § 29.05 (1970) which provides:

> "Producing cause" means an injury or condition which, either independently or together with one or more other injuries or conditions, results in death, *and without which such death would not have occurred when it did*. (Emphasis supplied.)

Appellant focuses only upon the last phrase in the definition, "without which such death would not have occurred when it did." And in this connection, appellant correctly states that there was proof that the fall and resulting vertebra fracture probably caused him to die sooner than he would have because he refused aggressive treatment for cancer.

Appellant's argument, however, does not take into consideration the definition in its entirety. To be a "producing cause," the injury, itself (or in connection with other injuries or conditions), must result in death, and without such injury the death would not have occurred when it did. Pattern Jury Charge 29.05 does not mean that "producing cause" may be proved up in the absence of evidence that the injury, itself (or together with one or more other injuries or conditions), resulted in death. Appellant failed to make that proof. To the contrary, and as observed previously, all of the evidence was that Schulle's injury *did not* cause his death. The cancer killed him. Moreover, the proof established conclusively that the injury did not aggravate the primary or secondary cancer so as to hasten its lethal course.

In addition, *Jacoby v. Texas Employers' Ins. Ass'n*, 318 S.W.2d 921 (Tex.Civ.App. 1958, writ ref'd n.r.e.), stands in appellant's way. In *Jacoby*, the court of civil appeals affirmed a judgment non obstante veredicto for the reason that there was no evidence that the worker's injury was a producing cause of his death.

The facts in *Jacoby* are remarkably similar to those in the present appeal. On March 26, 1955, Jacoby fell against a conveyor, breaking a rib on his left side. He was treated for a broken rib, but continued to suffer pain in the rib. He was then

hospitalized in September 1955 and the rib was removed. At the site of the fractured rib, cancer had developed. After surgery, he continued working until late December 1955, but his condition worsened. He became bedfast and finally died on July 23, 1956. *Id.* at 922.

Jacoby's x-rays showed that the primary cancer was located in the right kidney but that secondary cancer growth had developed in the spine as well as in the ribs. Before Jacoby's fall, the cancer had spread to the spine and to the rib in question. Jacoby died from cancer and the fall did not incite or aggravate the cancer. Jacoby was certain to die from cancer regardless of the injury. *Id.* at 922–23.

The physician testified that Jacoby's injury resulting from the fall probably did weaken his resistance to cancer and thereby hastened his death to some degree. The injury imposed some stress and strain on Jacoby's system. The physician opined that Jacoby died somewhat sooner because of the injury but he could not testify whether his life span was shortened "by one minute, one day or maybe six months." *Id.* at 923.

The court of appeals concluded that the extent of Jacoby's weakened resistance, and its relation to the cancerous condition, was entirely conjectural. The court concluded that the proof amounted to no more than a scintilla of evidence, *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898), and was insufficient to raise an issue of the on-the-job injury being a producing cause of death.

In the present appeal, the proof viewed most favorably to appellant is that Schulle's fall and resultant fracture made him bedridden and caused him constant pain. Such patients are more difficult to treat for cancer than are ambulatory persons. Schulle's condition, resulting from the fall, demoralized him to the point that he refused aggressive treatment for cancer. Although Schulle's cancer was terminal, aggressive treatment might have prolonged his life for some unspecified time.

The proof just outlined, is quite similar to the proof in *Jacoby;* that court deter-

mined the proof to be speculative and conjectural. Like the court in *Jacoby*, this Court has concluded, not without some difficulty, that the proof in this appeal showing a causal connection between Schulle's fall and his death from cancer is so weak as to create no more than a mere surmise or suspicion of its existence, *Joske*, 44 S.W. 1059, and hence is no evidence. Accordingly, the district court correctly directed the verdict.

The judgment is affirmed.

GAMMAGE, J., not participating.